RECORD NO. 11-2089 (L) and 11-2141

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

BEST MEDICAL INTERNATIONAL, INC., a Virginia Corporation;
BEST VASCULAR, INC., a Delaware Corporation,

*Plaintiffs-Appellants,*

v.

ECKERT & ZIEGLER NUCLITEC GMBH,
a German corporation, successor to QSA Global GmbH,

*Defendant-Appellee.*

## SUPPLEMENTAL OPENING BRIEF
## OF PLAINTIFFS-APPELLANTS

## ON APPEAL FROM THE UNITED STATES
## DISTRICT COURT FOR THE EASTERN DISTRICT
## OF VIRGINIA AT ALEXANDRIA

James Michael Brady (VSB No. 80002)
**BEST MEDICAL
 INTERNATIONAL, INC.**
7643 Fullerton Road
Springfield, Virginia 22153
(703) 451-2378 (Telephone)
(703) 451-8421 (Facsimile)
james@teambest.com

Counsel for Plaintiffs-Appellants -

# TABLE OF CONTENTS

I.   JURISDICTIONAL STATEMENT ................................................................ 1

II.  STATEMENT OF ISSUES......................................................................... 2

III. STATEMENT OF THE CASE ................................................................... 2

IV.  STATEMENT OF FACTS ......................................................................... 3

V.   SUMMARY OF THE ARGUMENT.............................................................. 4

VI.  ARGUMENT ........................................................................................ 6

   A.  STANDARD OF REVIEW ........................................................................ 6

   B.  DID THE DISTRICT COURT ERR IN DENYING BEST'S PETITION
      FOR ATTORNEYS' FEES AND COSTS? ................................................... 7

   C.  DID THE DISTRICT COURT ABUSE ITS DISCRETION IN GRANTING
      EZN'S MOTION FOR ATTORNEYS' FEES ON CLAIMS FOR WHICH
      EZN WAS UNSUCCESSFUL? .................................................................. 10

   D.  WERE THE HOURS EXPENDED BY EZN'S COUNSEL TO
      PERFORM THE LEGAL SERVICES REASONABLE?........................... 12

   E.  DID THE DISTRICT COURT ABUSE ITS DISCRETION IN AWARDING
      POLLARD'S ATTORNEYS' FEES?......................................................... 26

   F.  DID THE DISTRICT COURT ABUSE ITS DISCRETION IN AWARDING
      EZN EVERY COST AND EXPENSE THEY INCURRED IN THE
      LITIGATION? ...................................................................................... 30

CONCLUSION ................................................................................................ 38

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(E) OR 32(A) .......... 40

CERTIFICATE OF SERVICE........................................................................... 41

I

## TABLE OF AUTHORITIES

Adams v. The Brink's Company, 2008 U.S. Dist. LEXIS 18706
(W.D. Va. 2008) .......................................................................................................... 9

Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C.,
269 Va. 315, 330, 609 S.E.2d 49, 56 (2005)............................................................. 31

Biotechpharma, LLC v. W.H.P.M., Inc., 2012 U.S. Dist. LEXIS 9488
*18 (E.D. Va. 2012) ................................................................................................. 13

Bland v. Fairfax County, 2011 U.S. Dist. LEXIS 128522
*24 (E.D. Va. 2011) ......................................................................................... 24, 25

Bland v. Fairfax County, 2011 U.S. Dist. LEXIS 128522 at *25 ........................... 24

Chase v. DaimlerChrysler Corp., 266 Va. 544, 548-549, 587
S.E.2d 521, 523 (2003)............................................................................................ 7

Cherry v. Champion Int'l Corp., 186 F.3d 442, 449 (4th Cir. 1999)...................... 34

Covington Virginian v. Woods, 182 Va. 538, 29 S.E.2d 406, 410  (1944)............. 32

In Re Great Sweats, Inc.,113 B.R. 240, 244 (Bankr. E.D. Va. 1990)...................... 26

Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed.2d 40,
103 S. Ct. 1933 (1983) ..................................................................................... 13, 26

Hitachi Credit America Corp. v. Signet Bank, 166 F.3d 614,
631 (4th Cir. 1999) ................................................................................................. 6

Insight Holding Group, LLC v. Sitnasuak Native  Corp., 685 F.Supp.2d 582, 589
(E.D. Va. 2010) ..................................................................................................... 32

Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)......... 32

Mann v. Heckler & Koch Defense, Inc., 2011 U.S. Dist. LEXIS 46045,
*14 (E.D. Va. 2011) ............................................................................................... 34

Perry v. Bartlett, 231 F.3d 155, 163 (4th Cir. 2000) ................................... 7

Randle v. H & P Capital, Inc., 2010 U.S. Dist. LEXIS 74994
*24 (E.D. Va. 2010) ..................................................................... 13

Roanoke Properties Limited Partnership v. Dewberry & Davis,
30 Fed. Appx. 121, 124 (2002) .................................................... 6

Rucker v. Sheehy Alexandria, Inc., 255 F. Supp.2d 562, 564 n.3
(E.D. Va. 2003) ...................................................................... 26, 27

Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 180 (4th Cir. 1994) .......... 25

Saleh v. Moore, 95 F. Supp.2d. 555, 570-571 (E.D. Va. 2000) .............................. 10

Scallet v. Rosenblum, 176 F.R.D. 522, 529 (W.D. Va. 1997) ................................ 32

Signature Flight Support Corp. v. Landow Aviation Limited Partnership,
730 F. Supp.2d 513, 521 (E.D. Va. 2010) ................................... 13

Signature Flight Support Corp. v. Landow Aviation Limited Partnership,
730 F. Supp.2d 513, 529 (E.D. Va. 2010) ................................... 37

Smyth v. Rivero, 282 F.3d 268, 274 (4th Cir. 2002) ................................... 6

Southprint, Inc. v. H3, Inc., 2005 U.S. Dist. LEXIS 29707 *11
(W.D. Va. 2005) ................................................................... 32, 34

Trimper v. City of Norfolk, 846 F. Supp. 1295, 1307 (E.D. Va. 1994) .................. 13

Ulloa v. QSP, 271 Va. 72, 80, 624 S.E.2d 43, 50 (2006) .................................... 7, 10

West Square, L.L.C. v. Communication Technologies, Inc., 274
Va. 425, 434, 649 S.E.2d 698, 702 (2007) ................................... 10

Westgate at Williamsburg Condominium Association, Inc. v. Philip
Richardson Co., Inc., 270 Va. 566, 575, 621 S.E.2d 114, 118 (2005) .................... 31

Wyne v. Medo Industries, Inc., 329 F. Supp.2d 584, 589 (D. Md. 2004) .............. 34

Young Design, Inc. v. Teletronics International, Inc., 2001 U.S. Dist.
LEXIS 21010 *2 (E.D. Va. 2001), aff'd 38 Fed. Appx. 994 (4th Cir. 2002)............ 9

## STATUTES

28 U.S.C. § 1291 ......................................................................................................... 2

# I.   JURISDICTIONAL STATEMENT

The United States District for the Eastern District of Virginia possessed subject matter jurisdiction of this case pursuant to 28 U.S.C. 1291 which grants the district courts of the United States jurisdiction over any civil action where there is complete diversity of citizenship and the amount in controversy is at least $75,000.00. *28 U.S.C. 1291*. In this case, there is complete diversity of citizenship because Best Medical International, Inc. (hereafter "BMI") is a Virginia corporation and Best Vascular, Inc. (hereafter "BVI"; collectively BMI and BVI are referred to as "Best") is a Delaware corporation. APP000430, 1352. BMI has their principal place of business in Fairfax County, Virginia. APP000430. Eckert & Ziegler Nuclitec (hereafter "EZN") is a German corporation with its principal place of business in Braunschweig, Germany. APP000430, 1352.

On September 7, 2011, the Honorable Claude M. Hilton granted both Bests' Motion for Summary Judgment as to Defendant's counterclaims and EZN's Motion for Summary Judgment and resolved all issues before the District Court. By Order dated September 7, 2011, the entire case was dismissed. APP0001369. Best timely filed a Notice of Appeal on October 7, 2011. APP0001370. EZN filed a cross-appeal on October 20, 2011. APP0001372.

Subsequently, on January 6, 2012, the Honorable Claude M. Hilton granted EZN's motion for attorney fees and costs, and awarded EZN $584,735.08 for

attorneys' fees and $32,892.61 in costs. SUPPAPP000683-686. The District Court denied Best's Petition for Attorneys' Fees and Costs. SUPPAPP000683-686. This Court now has proper jurisdiction of this appeal pursuant to 28 U.S.C. § 1291, as the decision in this matter constituted a final decision of the District Court.

## II.    STATEMENT OF ISSUES

1.    Did the District Court Err in Denying Best's Petition for Attorneys' Fees and Costs?

2.    Did the District Court Abuse Its Discretion in Granting EZN's Motion for Attorneys' Fees on Claims for which EZN was Unsuccessful?

3.    Were the Hours Expended by EZN's Counsel to Perform the Legal Services Reasonable?

4.    Did The District Court Abuse Its Discretion In Awarding Pollard's Attorneys' Fees?

5.    Did the District Court Abuse Its Discretion in Awarding EZN Every Cost and Expense they Incurred in the Litigation?

## III.    STATEMENT OF THE CASE

Following the grant of summary judgment to both Best and EZN, the District Court issued an Order Establishing Briefing Schedule For Parties Fee Petitions and Bills of Costs on September 20, 2011. SUPPAPP0001. The parties

2

subsequently entered an Agreed Stipulation Extending Date to File Fee Petition and Bill of Costs Only on October 3, 2011. SUPPAPP0003. The District Court entered an Order Extending Date to File Fee Petition and Bill of Costs Only on October 4, 2011. SUPPAPP0007. Plaintiffs subsequently filed their petition for attorneys' fees and Bill of Costs on October 10, 2011. SUPPAPP0008-75, 488-503. Defendant also filed their motion for attorney fees and Bill of Costs on the same date. SUPPAPP00076-487. The District Court entered an Order on January 6, 2012 granting EZN's motion for attorneys' fees and costs and denying Best's petition for attorneys' fees and costs. SUPPAPP000683-686.

## IV.    STATEMENT OF FACTS

Best filed their Amended Complaint against EZN on July 21, 2010 alleging breach of contract and invoking equitable estoppel to prevent the destruction of Best's valuable production line. App. 430-590. EZN filed a counterclaim against Best for breach of contract and fraud and sought declaratory relief. APP000612. Following the completion of discovery, the District Court granted both parties' Motions for Summary Judgment and entered an Order dated September 7, 2011. APP0001352. Best timely appealed from the Order and EZN cross-appealed. APP0001370, 1372. Thereafter, the District Court issued an Order Establishing Briefing Schedule for Parties' Fee Petitions and Bills of Costs on September 20, 2011. SUPPAPP0001. The parties filed an Agreed Stipulation Extending the Date

3

to File Fee Petition and Bill of Costs Only on October 3, 2011. The date to file Fee Petitions and Bills of Costs was extended by Order dated October 4, 2011. SUPPAPP0003.

On October 10, 2011, Best submitted their Plaintiffs' Petition for Attorney's Fees and Bill of Costs supported by the Declaration of James Brady, the Affidavit of Shawn Weingast, and the Declaration of Susan Salen in Support of Plaintiffs' Petition for Fees and Costs. SUPPAPP0008-75, 488-503. Best sought attorney fees of $117,541.25 for successfully defending against all of EZN's counterclaims against Best and costs of $20,851.31. SUPPAPP0008-75.

EZN also submitted their Bill of Costs, Memorandum in Support of their Bill of Costs, Motion for Attorneys' Fees and Expenses and Memorandum in Support of their Motion for Attorneys' Fee and Expenses on October 10, 2011. SUPPAPP00076-467. EZN sought $14,845.70 in their Bill of Costs, $584,735.08 in legal fees, and a total of $32,892.61 in expenses. SUPPAPP00076-467. The Court awarded EZN the full amount of their requested attorneys' fees, legal fees and expenses. SUPPAPP000683-686.

## V.    SUMMARY OF THE ARGUMENT

Although Best prevailed against EZN's counterclaims, the District Court denied Best's Petition for Attorney' Fees and Costs in its entirety. SUPPAPP000683-686. The District Court awarded EZN 100% of their requested

4

attorneys' fees, costs and expenses despite the fact that EZN did not prevail on their counterclaims or their request for declaratory relief. SUPPAPP000683-686. If EZN is permitted to recover their attorneys' fees, costs and expenses for claims on which they were successful, then fairness dictates that Best should be permitted to recover their attorneys' fees, costs and expenses for claims on which they were successful.

The District Court also awarded EZN attorneys' fees and costs for claims on which there were not successful, such as the letter of credit claim. While EZN's attorneys voluntarily eliminated the hours for their unsuccessful fraud claim (SUPPAPP000131), they did not eliminate the hours they spent working on their unsuccessful letter of credit claim or the time they spent on their failed request for declaratory relief regarding the arbitration provisions of the SA.

The hours EZN's counsel spent performing relatively simple legal tasks was excessive and there was a great deal of duplication of effort between the attorneys. SUPPAPP000532-535. In addition, EZN's counsel billed for several hours of work that was not directly related to this lawsuit. SUPPAPP000218, 219, 252, 270, 275, 279, 290. While Best did not contest that the rate charged by EZN's attorneys was reasonable, Best did object to the outrageous amounts of time EZN's attorneys billed to perform relatively simple tasks. SUPPAPP000530-535. Moreover, Pollard submitted inadequate documentation to support an award of attorneys' fees.

5

SUPPAPP000531.  There are many inaccuracies in Pollard's time sheets that call into question the accuracy of those time sheets.

Finally, the District Court awarded EZN every single cost and expense they incurred in this lawsuit although the SA provides that a prevailing party is entitled to recover only "reasonable costs."  SUPPAPP000683-686.  The District Court essentially rewrote the SA to provide for "all costs and expenses" regardless of the degree of success and apparently without engaging in any real analysis of whether the costs and expenses were reasonable.

## VI.   ARGUMENT

### A.   STANDARD OF REVIEW

The Fourth Circuit reviews a district court's decision to award or deny attorneys' fees and costs for abuse of discretion. *Hitachi Credit America Corp. v. Signet Bank,* 166 F.3d 614, 631 (4th Cir. 1999).  Where the district court's ruling on attorneys' fees is based on an interpretation of substantive contract law rather than the discretion of the court, the Fourth Circuit reviews the denial of attorneys' fees and costs *de novo. Roanoke Properties Limited Partnership v. Dewberry & Davis,* 30 Fed. Appx. 121, 124 (2002), *citing Smyth v. Rivero,* 282 F.3d 268, 274 (4th Cir. 2002) (holding that, although we typically review award or denial of attorneys' fees and costs for an abuse of discretion, where district court denies attorneys' fees and costs based upon legal determination that a party is not a "prevailing party,"

6

we review the determination *de novo*); *Perry v. Bartlett*, 231 F.3d 155, 163 (4th Cir. 2000)("If the district court denies a prevailing party's motion for attorneys' fees, we review such denial for abuse of discretion. However, if the district court determines, as a matter of law, that a party is not a prevailing party, we review the district court's determination *de novo."* (internal quotation marks omitted)). Accordingly, the District Court's denial of Best's Petition for attorneys' fees and costs should be reviewed *de novo*.

## B.    DID THE DISTRICT COURT ERR IN DENYING BEST'S PETITION FOR ATTORNEYS' FEES AND COSTS?

Both Best's and EZN's claims for attorneys' fees arise from ¶13 of the Settlement Agreement which provides that "the prevailing party shall be entitled to recover, in addition to any damages proven at trial, reasonable attorneys' fees and costs incurred in any such action." APP000453. The Settlement Agreement does not define "prevailing party." Under Virginia law, the definition of "prevailing party" includes its synonym, "successful party." *Chase v. DaimlerChrysler Corp.,* 266 Va. 544, 548-549, 587 S.E.2d 521, 523 (2003); *see also, Ulloa v. QSP,* 271 Va. 72, 80, 624 S.E.2d 43, 50 (2006). Best was the successful party in that Best successfully defended itself from EZN's claims against Best. APP0001352-1368. EZN counterclaimed against Best alleging that Best breached the Settlement Agreement (hereafter "SA") by failing to post a performance bond. APP000616-

7

617. The District Court granted Best's motion for summary judgment and held that EZN had not established that they had suffered any damages as a result of Best's provision of a letter of credit in lieu of a performance bond. APP0001364-1365. EZN also alleged that Best breached the SA by failing to perform the decommissioning and decontamination obligations of the SA. APP000617-618. The District Court held that this claim was not viable because the SA requires EZN to arbitrate the cost of its performance of the D & D. APP0001365-1367. Additionally, Best successfully defended itself against EZN's fraud in the inducement claim.[1] The District Court correctly pointed out that EZN had "pointed to no evidence in the record that supports a claim of fraudulent inducement by Best." APP0001367-1368.

EZN further sought declaratory relief requesting that the Court release the parties from the arbitration provisions of the SA. APP000620-621. The District Court denied the requested relief and ordered the parties to comply with the arbitration provisions of the SA. APP0001365-1367. EZN also requested that the Court declare that Best was in default and EZN was released from their obligations under the SA and sought compensatory and punitive damages. APP000620-621. The District Court did not grant the requested declaratory relief. APP0001368.

---

[1] EZN's counsel has previously eliminated fees for this unsuccessful claim from their request for attorneys' fees.

8

Despite Best' success in defending itself against their adversary's claims, the District Court denied Best's petition for attorneys' fees and costs in its entirety. SUPPAPP000683-686. If EZN was a prevailing party because they were the sued party and prevailed on all of the claims brought against them, then it logically follows that since Best was the sued party with regard to EZN's counterclaims and since Best prevailed on all the claims brought against them, that Best should have been awarded their attorneys' fees and costs for the claims they successfully defended. In this case, neither party was awarded damages and both parties successfully defended against the other party's claims. SUPPAPP000683-686. Yet only EZN was granted attorneys' fees and costs by the District Court. SUPPAPP000683-686.    If EZN is permitted to recover its attorneys' fees and costs for the claims on which they were successful, then Best should be permitted to recover its attorneys' fees and costs on the claims Best successfully defended itself against relative to EZN's counterclaims.

In the Fourth Circuit, courts faced with this situation have found that where both parties were successful, it was proper to deny all requests for attorneys' fees and costs. *See, e.g., Young Design, Inc. v. Teletronics International, Inc.,* 2001 U.S. Dist. LEXIS 21010 *2 (E.D. Va. 2001), *aff'd* 38 Fed. Appx. 994 (4th Cir. 2002); *Adams v. The Brink's Company,* 2008 U.S. Dist. LEXIS 18706 (W.D. Va. 2008). Attorneys' fees are not appropriate in this case as there was no prevailing

9

party.    Plaintiff successfully defended itself against all of Defendant's counterclaims but was denied the relief requested by Plaintiffs' Petition for Fees and Costs without explanation. Defendant successfully defended Plaintiffs' causes of action but lost on all of its Counterclaims. Black's Law Dictionary defines "prevailing party" as the party "who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention." *Black's Law Dictionary*, Abridged Sixth Ed., 1991. In this case, both parties successfully defended against the other party's claims but neither party prevailed on the "main issue" of the case, which was breach of contract. Accordingly, the District Court erred in finding that EZN was the prevailing party since there was no clear prevailing party in this case and in finding that EZN was entitled to its attorneys' fees, expenses and costs.

## C. DID THE DISTRICT COURT ABUSE ITS DISCRETION IN GRANTING EZN'S MOTION FOR ATTORNEYS' FEES ON CLAIMS FOR WHICH EZN WAS UNSUCCESSFUL?

Virginia law dictates that a party cannot recover attorneys' fees for work performed on unsuccessful claims. *West Square, L.L.C. v. Communication Technologies, Inc.,* 274 Va. 425, 434, 649 S.E.2d 698, 702 (2007) *citing Ulloa v. QSP,* 271 Va. 72, 82, 624 S.E.2d 43, 49 (2006) (internal citations omitted); *see also, Saleh v. Moore,* 95 F. Supp.2d. 555, 570-571 (E.D. Va. 2000). EZN was unsuccessful in all respects on their claims that Best breached the SA by failing to

10

post a performance bond but did not eliminate these hours from their motion for attorneys' fee.[2] The District Court granted EZN's motion for attorneys' fees and costs in its entirety, including the hours spent pleading, researching, and conducting discovery on the issue of whether Best breached the SA by posting a letter of credit in lieu of a performance bond. SUPPAPP000683-686. Specifically, the bills submitted by Moran Reeves & Conn, P.C. (hereafter "MRC") show that they billed EZN for $3,501.75 in attorneys' fees, not including an undetermined amount of time spent on discovery regarding the letter of credit issue. SUPPAPP000187-316.

It is extremely, difficult if not impossible, to determine the amount of time billed by Pollard in connection with the letter of credit issue as she has lumped several tasks together under a majority of her time entries without indicating the amount of time spent on each task.[3] However, Appellant's counsel estimates that

---

[2] EZN's counsel has stated they eliminated the hours spent on their fraud claim since that claim was unsuccessful. A strict reading of ¶13 of the SA provides that the only attorneys' fees that can be recovered are those "brought for breach of this Agreement." Accordingly, Best does not believe the SA supports an award for tort claims and that those fees were never recoverable under the SA.

[3] It is impossible to determine from the bills submitted by Pollard how much time she billed on discovery on this particular issue as her bills are too vague; for instance, over a two day period in October 2010 she billed 14.5 hours for "Review and revise draft discovery responses and documents received from Hugh Evans. Also review and revise discovery to Best and review and Analyze BEST initial

11

at least 25.4 hours were billed on this issue for a total of $5,715.00 in attorneys' fees in connection with this unsuccessful claim, not including time spent on propounding or responding to discovery on this issue. Accordingly, EZN's attorneys' fees should be reduced by $9,216.75 or disallowed since EZN did not prevail on this issue.

Additionally, EZN's counsels' time spent on discovery should be reduced[4] since they were not the prevailing party on this issue. Best prevailed on this issue and is entitled to recover its attorneys' fees and costs in defending this claim. EZN is not entitled to any attorneys' fees and costs associated with this unsuccessful claim and it was an abuse of discretion for the District Court to award these costs to EZN. Additionally, EZN's counsels' time spent on discovery should be further reduced to account for time spent on discovery regarding the arbitration issue on which EZN was also unsuccessful.

### D.    WERE THE HOURS EXPENDED BY EZN'S COUNSEL TO PERFORM THE LEGAL SERVICES REASONABLE?

Best did not dispute that DeWayne Lonas' (hereafter "Lonas") billing rate for his legal services is reasonable. However, a thorough review of the legal bills submitted by Lonas, his associates, and support staff as well as the time sheets

---

disclosures and send report to client requesting Information pertaining to disclosures."

[4] In addition to the 10% previously deducted by Defendant.

submitted by Christine Pollard (hereafter "Pollard") show that they did not exercise good billing judgment and did not make a good faith effort to exclude hours that were excessive, redundant, or otherwise unnecessary. *Biotechpharma, LLC v. W.H.P.M., Inc.,* 2012 U.S. Dist. LEXIS 9488 *18 (E.D. Va. 2012) (reducing inflated fee petition by 65% where there was "notable duplication of efforts by attorneys on the same tasks" and counsel's lumping of time entries prevented the Court from determining the amount of time spent on each task) *citing Hensley v. Eckerhart,* 461 U.S. 424, 434, 76 L. Ed.2d 40, 103 S. Ct. 1933 (1983). An applicant for attorneys' fees should exercise "billing judgment" with respect to hours worked. *Signature Flight Support Corp. v. Landow Aviation Limited Partnership,* 730 F. Supp.2d 513, 521 (E.D. Va. 2010) *citing Hensley,* 461 U.S. at 437. Moreover, when reviewing a fee petition, the Court may identify and subtract any hours that appear excessive, duplicative, or unnecessary. *Biotechpharma,* 2012 U.S. Dist. LEXIS at *7, *citing Signature Flight Support,* 730 F. Supp.2d at 521-22. Further, the "Court may not simply accept as reasonable the number of hours reported by counsel." *Randle v. H & P Capital, Inc.,* 2010 U.S. Dist. LEXIS 74994 *24 (E.D. Va. 2010) *citing Trimper v. City of Norfolk,* 846 F. Supp. 1295, 1307 (E.D. Va. 1994).

The issues in this case were not complex. This was a relatively simple breach of contract case arising from the SA. The issues were not novel or

13

complex. Yet, the billing records submitted by EZN's counsel show that Mr. Lonas and his associates spent excessive amounts of time performing relatively simple tasks. For example, Mr. Lonas touts himself as an experienced attorney who is comfortable litigating in both the state and federal courts and is experienced in commercial litigation. SUPPAPP000317. Despite this, Mr. Lonas billed EZN for 48.3 hours ($12,799.50)[5] to draft the response and supporting affidavits to Plaintiffs' Motion for Temporary Restraining Order. SUPPAPP000190-193. This does not include the 19.1 hours ($3,563.50) spent by associates discussing, researching, revising, and finalizing the response.[6]    SUPPAPP000190-193. Defendant's responsive brief consisted of 18 typed, double-spaced pages (excluding the signature page and certificate of services pages), a ten page Declaration by Franklin Yeager, a two page Declaration by Christine Pollard, as well as three letters and one email attached as exhibits to the response. APP0004, Docket 9.

The day after Lonas spent 11 hours finalizing the response to Plaintiffs' motion for temporary restraining order, Lonas spent eight more hours preparing to argue the response he had just finished writing.    SUPPAPP000193-194.    The

---

[5] This number does not include the time spent reviewing the Complaint and Motion for Temporary Restraining Order, analyzing the issues regarding the standard for TRO and standing to respond to ex parte motion.

[6] This number does not include the hours eliminated by EZN's counsel for work performed by Meghan Deal.

14

following day, the day of the hearing, Mr. Lonas spent an additional 6.4 hours preparing to argue the motion. SUPPAPP000194. In total, Mr. Lonas spent 14.4 hours preparing for the hearing. SUPPAPP000193-194. In addition, an associate attorney (Jana Roemmich) spent 7.6 hours on June 10, 2010 preparing for a hearing that she was not going to argue. SUPPAPP000193. Although EZN reduced its fees for associates accompanying Lonas to hearings, EZN did not reduce its fees to account for this associate preparing for a hearing she was not going to argue and in fact did not argue. In addition to Mr. Lonas and his support staff, Christine Pollard also billed EZN for performing duplicative legal research on the motion for temporary restraining order and drafting the response to the motion. SUPPAPP000433. It is impossible to determine the precise amount of time Pollard spent on responding the TRO but the bills show that she spent at least 34.5 hours, for a total of $7,762.50, discussing, reviewing, researching, and drafting the response. SUPPAPP000433.

Another example of excessive billing is the time spent by MRC for filing a motion to amend the Court's Scheduling Order. MRC billed 7.8 hours in July 2011 for filing a simple and short (2 pages, excluding signature page and certificate of service) Motion to Amend the Scheduling Order and Memorandum in Support of the motion (4 pages, excluding signature page and certificate of service). SUPPAPP000200-203. In other words, MRC billed $1,626 for drafting a

15

total of six pages of facts and argument for a very simple motion that easily could have been completed in less than half the time billed by MRC. Even if one adds the two page "Special Appearance Response" to the Court's Scheduling Order, which is only two pages in length (excluding signature page and certificate of service), billing nearly 8 hours to draft such a simple, straightforward motion is excessive and demonstrates a lack of good billing judgment. Additionally, Pollard billed at least five additional hours ($1,125.00) for reviewing the response drafted by EZN's Virginia counsel and making revisions to the document. SUPPAPP000434-436.

Perhaps the best example of excessive billing for routine tasks is the time EZN's counsel spent drafting an answer and counterclaim to the lawsuit. MRC spent a whopping 13.3 hours drafting, reviewing, and revising EZN's answer and counterclaim. SUPPAPP000200, 213-214, 216-217. Nearly all of that time was billed by Lonas when this task could have and should have been performed by an associate. In addition to drafting the answer and counterclaim, EZN's attorneys billed an additional 9.2 hours for discussing the matter with Pollard and with the client and emailing each other copies of the answer and counterclaim. SUPPAPP000194, 196, 199-201, 212-213, 216-217. This does not include four hours spent analyzing documents produced in the previous lawsuit for relevance in defense and prosecution of EZN's counterclaims. SUPPAPP000220. Although 22.5 hours is a lot of time to spend on preparing an answer to a lawsuit that

contained only three counts, it pales in comparison to the hours Pollard billed for this simple task. Pollard billed an incredible 46.5[7] hours for drafting and revising the answer and counterclaim, and discussing the answer and counterclaim with MRC and EZN. SUPPAPP000434, 436-438. The hours spent by Pollard and MRC represents a complete lack of billing judgment in performing the relatively simple task of answering a complaint and drafting a counterclaim.

EZN's Virginia counsel did not bill excessively just on drafting responsive pleadings, motions and responses to motions but also in conducting discovery. In fact, in conducting discovery, EZN's Virginia counsel took their excessive billing practices to new heights. First, EZN's Virginia counsel started by researching whether they could conduct discovery before their client was served with the Complaint. SUPPAPP000199-200, 207. Their ability to overbill for that task was short-circuited by the filing of a Scheduling Order by the Court on July 16, 2010. APP0005, Docket 14. Thereafter, MRC billed 3.4 hours just for the Rule 26(f) conference. SUPPAPP000200-203. The actual conference with Plaintiff's counsel on July 29th lasted for 30 minutes (SUPPAPP000202) but EZN's counsel spent nearly three hours exchanging emails with Plaintiff's counsel, discussing the conference with Pollard, and analyzing Plaintiff's proposed conference report and

---

[7] This is an estimate as it is impossible to determine the exact amount of time Pollard billed because she has lumped several tasks under each time entry. The actual number may be even higher.

discovery plan. SUPPAPP000200-203. All this was for naught since EZN had not been served and was in the process of filing a motion to amend the Scheduling Order, which was granted in part and denied in part. APP0006, Docket 25. When the Rule 26(f) conference was re-scheduled, EZN's counsel billed another 2.3 hours for participating in, discussing, reviewing and revising the conference report and discovery plan. SUPPAPP000218.

Mr. Lonas billed 9.7 hours (for a total of $2,570.50) for drafting 28 interrogatories, 44 requests for admission and 45 requests for production. SUPPAPP000220-223. In addition, Pollard billed at least 10 additional hours for drafting this same discovery and reviewing and revising the discovery requests. SUPPAPP000438. Best's initial written discovery consisted of 31 interrogatories (21 propounded by Best Medical International and 10 propounded by Best Vascular) and 37 requests for production that were served on October 14, 2010. MRC spent an estimated 72.4 hours responding to this discovery and billed EZN over $15,000 for responding to this initial set of written discovery. SUPPAPP000220-223, 226-230. See also, APP000634. Additionally, Pollard billed at least 41.5 hours for responding to this same discovery and billed EZN at least $9,337.50 for this duplicative work. SUPPAPP000438, 441. MRC allegedly reduced their fee by 10% for the time spent responding to Best's written discovery

18

but this does not sufficiently account for the excessive amount of time MRC and Pollard spent responding to the discovery.

After the Court granted both parties' Motions for Summary Judgment, MRC and Pollard engaged in an unrestrained billing spree in connection with their anticipated motion for attorneys' fees and costs. The amount of time spent on this task is hard to comprehend but is best illustrated by the chart below which shows only the amount of time spent performing legal analysis, researching and analyzing motions for attorneys' fees and costs:

| DATE | DESCRIPTION | TIME BILLED | RESPONSIBLE ATTORNEY |
|------|-------------|-------------|----------------------|
| 4/13/2011 | Begin analyzing Fourth Circuit's and Virginia courts' interpretation of "prevailing party" (SUPPAPP000293) | 3.00 | CDL |
| 4/14/2011 | Continue analyzing caselaw re: "prevailing party" and proof of reasonableness (SUPPAPP000293) | 1.70 | CDL |
| 4/14/2011 | Legal Analysis re: procedure followed in Alexandria federal court for motion for attorneys' fees and costs pursuant to Rule 54 (SUPPAPP000293) | 1.80 | MH |
| 4/15/2011 | Analyze prior decisions from EDVa-Alexandria re: reasonableness of attorneys' fees and proof thereof (SUPPAPP000293) | 1.00 | CDL |
| 4/15/2011 | Legal research regarding costs and fees. | .25 | C. Pollard |
| 4/18/2011 | Continue analyzing caselaw and drafting petition for attorneys' fees and costs (SUPPAPP000294) | 1.40 | CDL |
| 4/18/2011 | Assist D. Lonas with legal analysis re: motion for attorneys' fees and costs | 1.60 | MH |

| | | | |
|---|---|---|---|
| | (SUPPAPP000294) | | |
| 4/19/2011 | Legal analysis re: Fourth Circuit and E.D. Va. fee award opinions and orders (SUPPAPP000294) | 1.10 | MH |
| 4/20/2011 | Continue analyzing relevant caselaw and drafting petition for attorneys' fees and costs (SUPPAPP000295) | 1.70 | CDL |
| 4/20/2011 | Legal analysis re: reasonableness of attorneys' fees under E.D. Virginia opinions (SUPPAPP000295) | 1.40 | MH |
| 4/25/2011 | Continue researching and drafting memorandum in support of motion for attorneys' fees and costs (SUPPAPP000295) | .70 | CDL |
| 4/26/2011 | Analyze caselaw re: Lodestar factors (SUPPAPP000295) | .30 | CDL |
| 4/27/2011 | Review caselaw re: meaning of "prevailing party" in breach of contract action (SUPPAPP000295) | .20 | CDL |
| 4/28/2011 | Review recent Fourth Circuit and Eastern District opinions re: reasonableness of fees and costs (SUPPAPP000296) | .30 | CDL |
| 4/30/2011 | Continue analyzing caselaw re: recovery of attorney's fees and costs (SUPPAPP000296) | .70 | CDL |
| 5/2/2011 | Analysis of caselaw suggested for review by S. Murphy re: lodestar calculation and reasonableness factors (SUPPAPP000299) | .90 | CDL |
| 6/10/2011 | Review recently filed fee petition, bill of costs, supporting affidavits and memoranda of law in other breach of contract case in the Alexandria Division (SUPPAPP000302) | 1.5 | CDL |
| 6/28/2011 | Research motion for attorneys' fees and supporting documentation. | 1.00 | C. Pollard |
| 7/19/2011 | Legal analysis re: procedure followed in E.D. of Virginia, Alexandria | 2.10 | MH |

| | | | |
|---|---|---|---|
| | Division for filing and recovering attorney' fees and costs (NOTE: SEE ENTRY OF 4/14/2011 BY MH ABOVE) (SUPPAPP000305) | | |
| 9/1/2011 | Analyze recent submissions in similar fee petition cases in Eastern District of Virginia (SUPPAPP000309) | 2.20 | CDL |
| 9/6/2011 | Continue analyzing law re: petition for contractual recovery of fees/costs and bill of costs under Rule 54 (SUPPAPP000309) | 3.00 | CDL |
| 9/7/2011 | Continue analyzing caselaw re: recovery of fees and costs (SUPPAPP000309) | 1.00 | CDL |
| 9/8/2011 | Continue analyzing federal and local rules and drafting declaration in support of fees and costs (SUPPAPP000310) | .60 | CDL |
| 9/8/2011 | Research and draft memorandum re: prevailing party (SUPPAPP000310) | 1.60 | MAK |
| 9/9/2011 | Legal analysis re: federal court jurisdiction and time limits to file motion for fees beyond attorneys' costs (SUPPAPP000310) | 1.10 | MAK |
| 9/9/2011 | Research and draft memorandum re: prevailing party (SUPPAPP000310) | 4.20 | MAK |
| 9/12/2011 | Analyze legal issues re: proof of prevailing party under federal law (SUPPAPP000311) | .40 | CDL |
| 9/12/2011 | Research and draft memorandum re: prevailing party (SUPPAPP000311) | 5.30 | MAK |
| 9/12/2011 | Legal analysis re: Federal Rule 54 and recoverable costs (SUPPAPP000311) | 1.30 | MH |
| 9/15/2011 | Legal analysis re: prevailing party status (SUPPAPP000312) | 1.20 | MH |
| 9/16/2011 | Analyze intersection of appellate rules and deadlines for filing motion for fees and costs (SUPPAPP000312) | .80 | CDL |
| 9/19/2011 | Legal analysis in support of EZN's | 1.80 | MH |

|  | | | |
|---|---|---|---|
|  | petition for attorney's fees and costs (SUPPAPP000313) | | |
| 9/21/2011 | Analyze "prevailing party" and burden of proof issues integral to fee petition and bill of costs (SUPPAPP000313) | .40 | CDL |
| 9/21/2011 | Legal analysis re: burden of proof when establishing reasonableness of attorney rates (SUPPAPP000313) | 1.1 | MH |
| 9/21/2011 | Legal analysis re: judicial finding of default as determinative factor in analyzing prevailing party status (SUPPAPP000313-314) | 1.5 | MH |
| 9/21/2011 | Legal analysis re: prevailing party status in breach of contract claims (SUPPAPP000314) | 2.1 | MH |
| 9/22/2011 | Analyze caselaw supporting fee petition (SUPPAPP000314) | .50 | CDL |
| 9/22/2011 | Legal analysis of prevailing party status for cases involving bill of costs (SUPPAPP000314) | .80 | MH |
| 9/23/2011 | Continue drafting fee petition and analyzing legal issues re: "prevailing party" (SUPPAPP000314) | 2.40 | CDL |
| 9/23/2011 | Review and analyze caselaw cited in support of petitions for attorney's fees and costs filed in the E.D. of Virginia (SUPPAPP000314) | .60 | MH |
| 9/26/2011 | Continue legal analysis of prevailing party issues and drafting of fee petition (SUPPAPP000314) | 4.50 | CDL |
| 9/26/2011 | Legal analysis re: attorney fee provisions under substantive state law (SUPPAPP000314) | 1.70 | MH |
| 9/27/2011 | Legal analysis re: rate calculation (SUPPAPP000315) | .80 | MH |
| 9/29/2011 | Legal analysis re: prevailing party status under Virginia substantive law (SUPPAPP000315) | 1.20 | MH |

| 9/29/2011 | Legal analysis re: burden of proving prevailing party status (SUPPAPP000315) | .60 | MH |
|-----------|------------------------------------------------------------------------------|-----|-----|
| **TOTAL** | | 65.35 | |

The above chart illustrates the excessive amount of time MRC spent researching relatively simple issues and the inordinate amount of duplication of effort by the attorneys working on this case.

More shocking, however, is the amount of time MRC billed for drafting, revising, and finalizing the motion for attorneys' fees and expenses and the bill of costs and supporting memorandum in support. MRC spent 92.9[8] hours drafting and revising their Motion for Attorneys' Fees and expenses, memorandum in support, Bill of Costs and memorandum in support of the Bill of Costs. SUPPAPP000293-294, 304-305, 310-315. In addition, MRC billed over 28 hours for telephone conferences and e-mail exchanges regarding the attorneys' fee petition and another 16.5 hours analyzing, organizing and coordinating the legal bills. SUPPAPP000292-296, 299-300, 302-305, 307, 309-315. Between April 12th and September 30th, MRC billed EZN a total of 219 hours for working on the fee petition and other tasks related to the fee petition, such as filing the legal bills under seal. SUPPAPP000292-316. Pollard billed an additional approximately 15

---

[8] This number does not include any hours included in the above chart that reference drafting the fee petition.

23

hours for discussing the fee petition, preparing her bills, and drafting her declaration. SUPPAPP000454, 458, 459.

The District Court abused its discretion in not reducing MRC's fees for the excessive amount of time they spent preparing the fee petition. In *Bland v. Fairfax County,* the plaintiff sought compensation for 23.6 hours plaintiff's attorney spent on preparing the fee petition and attending oral argument on the fee petition in a civil rights case. *Bland v. Fairfax County,* 2011 U.S. Dist. LEXIS 128522 at *25. The Court reduced plaintiff's attorney's hours by 50% because of her familiarity with the case. *Id.* In this case, there is no question that MRC was familiar with the case and there is nothing so complex about a fee petition that could justify the enormous amount of time MRC spent researching, drafting, discussing, and organizing the documents supporting their fee petition and bill of costs.

In addition, the District Court awarded EZN's Virginia counsel fees for hours spent on motions that were never filed. For example, between June and August 2010, EZN's Virginia counsel billed $1,972.50 for researching, analyzing and writing memos regarding whether to file a 12(b)(6) motion. SUPPAPP000194-195, 199, 207. EZN's counsel never filed a 12(b)(6) motion in this case. MRC deducted time spent on a motion to compel that was found to have been untimely filed but did not deduct the time spent on this motion that they never filed.

24

Additionally, Pollard's fees should be reduced by the amount of time she spent attending depositions of witnesses as it was not reasonable or necessary for her to attend the depositions in addition to Lonas and a client representative. For example, Pollard attended the depositions of Hugh Evans, Helmut Menuhr, Craig Reed's January 6, 2011 fact witness deposition but not his expert witness deposition on February 4, 2011, and Shawn Weingast's deposition. SUPPAPP000445, 449. Evans and Menuhr were witnesses on behalf of EZN. Evans was a fact witness only. Menuhr was both a fact witness and was designated by EZN as an expert witness. Menuhr's designation as an expert does not justify Pollard's attendance at his deposition given that it was not necessary for Pollard to attend the depositions of other expert witnesses in this case, such as the deposition of Dr. Michael Cowley, Dr. Ron Waksman, and Craig Reed's expert deposition. For each deposition at which Pollard was present, there was also a representative of EZN present who was knowledgeable about the facts of the case. Courts in the Fourth Circuit are "sensitive to the need to avoid use of multiple counsels for tasks where such use is not justified by the contributions of each attorney." *Bland v. Fairfax County,* 2011 U.S. Dist. LEXIS 128522 *24 (E.D. Va. 2011) *citing Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 180 (4th Cir. 1994). Pollard did not ask any questions of the deponents during any of the

depositions attended yet billed numerous hours for traveling from Texas to attend these depositions along with co-counsel who was taking the depositions.

Finally, the District Court awarded EZN attorney fees for time MRC billed that was not directly related to this lawsuit. For instance, MRC billed $754.50 for talking to defense counsel in other lawsuits in which Best was involved in other jurisdictions that were not related to this lawsuit. SUPPAPP000218, 219, 229, 252, 270, 275, 279, 290. While this information may have been of interest to EZN's counsel, it was not necessary to the defense or prosecution of this case. Therefore, the District Court should not have awarded EZN attorneys' fees for this work. While MRC's billing rate may be reasonable, they compensate for the low rate by excessively billing for every task performed on behalf of the client.

### E. DID THE DISTRICT COURT ABUSE ITS DISCRETION IN AWARDING POLLARD'S ATTORNEYS' FEES?

Where documentation of attorneys' fees is inadequate, the District Court may reduce the fee award accordingly. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 76 L. Ed.2d 40, 103 S. Ct. 1933 (1983). Inadequate documentation includes the practice of lumping or grouping several tasks together under a single entry without specifying the amount of time spent on each particular task. *Rucker v. Sheehy Alexandria, Inc.,* 255 F. Supp.2d 562, 564 n.3 (E.D. Va. 2003) *citing In re Great Sweats, Inc.,* 113 B.R. 240, 244 (Bankr. E.D. Va. 1990)(disapproving "lumping" of

several tasks under a single entry without specifying the amount of time spent on each task so that no accurate determination of the reasonableness of time expended can be made)(citations omitted). This and other instances of inadequate documentation prevent an accurate determination of the reasonableness of the time expended in a case and because of this, inadequate documentation is a proper basis for reducing a fee award either by disallowing specific hours that are not adequately documented or by reducing the overall fee award. *Rucker,* 255 F. Supp.2d 562, 564, n. 3.

Pollard's bills for legal services present a stellar example of lumping. SUPPAPP000428-459. It is impossible to accurately determine how much time Pollard spent performing various legal tasks. In some cases, it is even impossible to determine the date on which Pollard performed the services, or the amount of time she spent on that task on any given date. For example, in January 2010, Pollard billed four hours for work performed between January 6 and January 13 for "Draft letter to Best attorney, forward to client and former attorney for review, and finalize." SUPPAPP000428. In June, Pollard billed 23 hours for work performed between June 7 and June 9 for "Work on response to application for TRO." SUPPAPP000433. Between October 26 and 27th, Pollard billed 14.5 hours for "Review and revise draft discovery responses and documents received from Hugh Evans. Also review and revise discovery to BEST and review and Analyze BEST

27

initial disclosures and send report to client requesting Information pertaining to disclosures." SUPPAPP000438. It is impossible to accurately determine the amount of time spent on each discrete task, so it is equally impossible to determine whether the time Pollard spent on these and other tasks were reasonable or excessive.

Pollard's bills should have been disallowed because they are not accurate. According to her own Affidavit, ¶13, Pollard typically works on multiple matters for EZN then bills them on those matters collectively. SUPPAPP000408. Accordingly, the time sheets submitted by Pollard were prepared by her after she "separated out the time" she spent working on other matters and do not represent contemporaneous time entries made at or near the time the work was performed on this case. This explains the inability to determine with any accuracy the precise amount of time Pollard spent on a particular task. Pollard has not submitted the bills from which she allegedly culled the time spent on this case so there is no way to analyze or determine the accuracy of the time sheets submitted in support of her attorneys' fees. Pollard has, in effect, gone back and attempted to guess how much time she spent working on this case. Pollard's fees should be excluded in their entirety.

Pollard's attorney fees are also not reliable as they do not agree with MRC's time entries. For example, on June 22, 2010 Pollard billed 1.5 hours for discussions

28

with co-counsel and client regarding the Letter of Credit. SUPPAPP000433. However, there is no corresponding charge on MRC's bills for that date indicating there was a telephone call between MRC, Pollard, and their client. Similarly, on June 30th, Pollard allegedly had a one hour discussion with co-counsel regarding their response to Salen's letter and "litigation posture." SUPPAPP000433. Again, however, there is no corresponding charge for such a telephone call in MRC's bills. There are other instances where the time spent on telephone conferences with co-counsel do not match. For instance, on August 12, 2010, Pollard billed one hour for "discussions with counsel regarding status, forwarding files from Dewey Leboeuf." SUPPAPP000436. While there is a charge on MRC's bills for this telephone conference, the time billed for the conference was .4 rather than one hour. SUPPAPP000207. On August 20, 2010 Pollard again billed an hour for discussions with co-counsel but MRC billed only .7 of an hour for this conference. SUPPAPP000207, 436. On September 29, 2010 Pollard billed four hours for "conference call, forward draft counterclaim to client/co-counsel for review." SUPPAPP000437. According to the MRC bills, the conference called lasted 1.1 hours, which means Pollard spent nearly three hours forwarding the draft of EZN's unsuccessful counterclaim to her client and co-counsel. SUPPAPP000213. This is evidence that even where Pollard knew the date she performed a particular task, she did not necessarily know the precise amount of time she spent performing that

29

task and inaccurately estimated on the time she spent performing those tasks. As the above examples illustrate, Pollard's time entries contain numerous inaccuracies which call all of her time entries into question. Having failed to produce adequate documentation of her attorneys' fees, it was an abuse of discretion to award EZN Pollard's attorney's fees and the award of her fees should be reversed.

## F.     DID THE DISTRICT COURT ABUSE ITS DISCRETION IN AWARDING EZN EVERY COST AND EXPENSE THEY INCURRED IN THE LITIGATION?

The SA provides that the prevailing party may recover "reasonable attorneys' fees and costs." APP000453, ¶13. The SA does not provide that the prevailing party is entitled to recover all costs but only "reasonable costs." APP000453, ¶13. The SA does not entitle the prevailing party to recover expenses. APP000453, ¶13. There is no authority that permits an allegedly prevailing party to recover expenses in the absence of a contractual provision or statute that specifically awards expenses to a prevailing party. In this case, the District Court granted EZN every cost and expense they saw fit to incur in this lawsuit without exception. SUPPAPP000683-686.

Litigation attorneys routinely distinguish between taxable costs, which are statutorily defined by *28 U.S.C. §1920,* and non-taxable litigation expenses. This is necessary and prudent because depending on the statute or contractual provision that allows a party to recovery attorneys' fees and costs, non-taxable litigation

30

expenses may or may not be recoverable. Accordingly, in this case, MRC filed their Bill of Costs requesting taxable court costs and filed a separate motion for attorneys' fees and expenses, and Best objected to both. SUPPAPP000526-594. It is clear that the attorneys for the parties in this case distinguished between costs, which are provided for by statute, and expenses, which are not provided for by statute.

It is undisputed that both parties were represented by counsel when they entered into the SA and both parties' counsel gave input as to the terms to be used in the SA. If the parties had wanted the non-prevailing party to be liable for all costs or for both costs **and** expenses, the parties would have included that language in the SA. In the absence of such provisions, the District Court virtually rewrote the parties' contract to allow EZN to recover not only costs but every single expense they incurred in the lawsuit. The rule is well-settled in Virginia that a court is not permitted to rewrite a document or add terms not included by the parties. *Westgate at Williamsburg Condominium Association, Inc. v. Philip Richardson Co., Inc.,* 270 Va. 566, 575, 621 S.E.2d 114, 118 (2005) *citing Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C.,* 269 Va. 315, 330, 609 S.E.2d 49, 56 (2005)(court cannot alter the provisions of or add to the plain language of the contract)(additional citations omitted). Nor is it surprising that the parties would have included a provision awarding costs that are provided by statute given the

31

history of contentiousness between the parties.    Nor is the word "costs" superfluous if applied only to costs allowed under Rule 54(d) of the Federal Rules of Civil Procedure.    If the word was not included, it could be argued that the parties waived their right to collect costs and the absence of the word "costs" was evidence of intentional waiver of that right. Pursuant to Virginia law, waiver is the voluntary or intentional abandonment of a known right or privilege. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *Covington Virginian v. Woods,* 182 Va. 538, 29 S.E.2d 406, 410 (Va. 1944). Statutory rights can be waived. *See, e.g., Insight Holding Group, LLC v. Sitnasuak Native Corp.,* 685 F. Supp.2d 582, 589 (E.D. Va. 2010).

The District Court apparently summarily awarded all of EZN costs and expenses with no real analysis of whether the expenses were reasonable.    The District Court awarded EZN all of their deposition costs, including costs for shipping the deposition transcripts by UPS. SUPPAPP00082, 84-85, 87.    Costs for postage and shipping are not taxable. *Southprint, Inc. v. H3, Inc.,* 2005 U.S. Dist. LEXIS 29707 *11 (W.D. Va. 2005) *citing Scallet v. Rosenblum,* 176 F.R.D. 522, 529 (W.D. Va. 1997).    Nor was it necessary or reasonable to have the deposition transcripts shipped by UPS.    The depositions in question were taken between January 6, 2011 and February 14, 2011. Each invoice also shows the normal seven to ten day delivery of the original transcript. SUPPAPP00082, 84-85, 87.    The

deadline for the parties' to file their summary judgment motions was not until March 14, 2011 so there was no justification for requiring UPS delivery of transcripts of depositions taken in early January and February. The invoices submitted by EZN show that each deposition taken by EZN was shipped to them by UPS at a cost of $40.00 each for a total of $160.00. SUPPAPP00082, 84-85, 87.

The District Court also awarded EZN $286.15 for the cost to obtain an expedited transcript of the summary judgment hearing held on April 11, 2011. SUPPAPP00080, 683-686. While a copy of the transcript may have been necessary, there is no justification for ordering an expedited transcript given that the District Court advised the parties of its rulings on the parties' Motions for Summary Judgment at the hearing but advised the parties not to hold him to what he was saying. APP0001346, lines 9-11. The District Court did not issue its opinion granting the parties' summary judgment motions until September 7, 2011. APP0001352. After the District Court issued the September 7, 2011 Order, the Court subsequently issued an Order on September 20, 2011 establishing the briefing schedule for the parties' Fee Petitions and Bills of Costs. SUPPAPP0001. There would have been more than sufficient time between the issuance of the September 7th Order and the issuance of the September 20th Order to order and obtain a copy of the transcript. Moreover, the District Court willingly granted the

33

parties' joint request for an extension of time to file their Fee Petitions and Bill of Costs and extended the date from October 4, 2011 to October 10, 2011. SUPPAPP0007. There was simply no reasonable need for an expedited transcript of the hearing.

The District further awarded EZN's costs for deposition transcripts that were not used in support of their summary judgment motion. The costs of deposition transcripts not used at trial or to support a preliminary or dispositive motion are not recoverable. *Southprint,* 2005 U.S. Dist. LEXIS 29707 *10-11, *citing Wyne v. Medo Industries, Inc.,* 329 F. Supp.2d 584, 589 (D. Md. 2004) (finding that only those depositions submitted in connection to the dispositive motion that terminated the litigation were recoverable). In this case, EZN only used excerpts from the depositions of Shawn Weingast, Helmut Menuhr and Eberhard Fritz. The costs of deposition transcripts and videography services for Craig Reed, Hugh Evans, Dr. Ron Waksman, Joseph Hathcock, Fritz Hohn, and Dr. Michael Cowley should be disallowed.

Nor was it reasonable to have the depositions of Eberhard Fritz, James Craig Reed, and Shawn Weingast videotaped. Fees for videography of a deposition are only available where "necessarily obtained for use in the case." *Mann v. Heckler & Koch Defense, Inc.,* 2011 U.S. Dist. LEXIS 46045, *14 (E.D. Va. 2011) *citing Cherry v. Champion Int'l Corp.,* 186 F.3d 442, 449 (4th Cir. 1999). Fritz was Best's

34

primary witness in this case and was crucial to Best's case and there was no question that he would testify live at trial. Further, Reed and Weingast are employees of Best so there could be no question of the availability of these witnesses. EZN's counsel had ample opportunity to evaluate their demeanor during the deposition. This is just another example of MRC's failure to use good billing judgment and to keep the costs of litigation in check.

For the reasons set forth below, the following expenses are excessive and/or unreasonable:

1.    FedEx charges for forwarding documents to the Court, co-counsel and Best's counsel. SUPPAPP000214, 224, 244, 258, 271, 286-287, 297, 301, 303, 440. It was not necessary to FedEx copies of motions being filed with the District Court because since March 2007 and for all cases filed after that date, with the exception of the complaint, all documents required to be filed are to be electronically filed. Additionally, EZN's counsel could have emailed documents to co-counsel and Best's counsel rather than incurring unnecessary FedEx expenses. Nevertheless, the Court awarded EZN the full amount of its FedEx expenses.

2.    Use of a private process server to serve their response to Best's motion for TRO on the Court the day before the hearing. SUPPAPP000198, 258. Again, this response was electronically filed so there was no need to spend $125 on

35

a same day process service on the Court.

3.    EZN's travel expenses (including mileage, tolls, air fare, meals and other such charges) are not reasonable because although they deducted the hours billed for associates to attend hearings in this case along with Lonas, they did not deduct the corresponding expenses.

4.    EZN's expenses for meals and lodging are not reasonable. EZN's counsel billed over $3,000 for meals and lodging in this case. This was excessive because many of the meal charges were incurred in connection with attendance at hearings just a ninety minute drive from EZN's counsel's office. Many of the meals were extravagant such as spending over $43 on lunch and a snack while attending a hearing in Alexandria, a $95 dinner with Christine Pollard, $50 for breakfast and lunch, a $100 dinner with Fritz Hohn, an over $300 dinner for Lonas, Pollard, Evans and Menuhr, and a $143.08 dinner the night before the summary judgment hearing. SUPPAPP000258, 285-286, 297, 369, 374, 377, 401.

Similarly, when lodging was required, Defendant purchased expensive rooms costing from $200 per night to over $400 per night. SUPPAPP000369, 376-377, 380, 390, 401, 403, 522-525. Such extravagance was not necessary nor was it reasonable. Finally, both Mr. Lonas and Mr. Hundley elected to spend the night before the summary judgment hearing in Alexandria and booked rooms at The Westin Alexandria. SUPPAPP000401, 403. Mr. Lonas' room cost $433 per night

36

including taxes, valet parking, in room internet service and $143.08 dinner at Jamieson Grille, which presumably included Mr. Hundley. SUPPAPP000401. Mr. Hundley's room cost $256.34 including taxes. SUPPAPP000403.

Given that their office is less than 100 miles from the Courthouse, there was no justification for these expenses and they certainly were not reasonable. The 2011 U.S. General Services Administration's maximum per diem lodging rate allowed for federal employees' stay in Alexandria, Virginia for their travel in April 2011 is $211 per night, excluding taxes. *See Signature Flight Support Corp. v. Landow Aviation Limited Partnership*, 730 F. Supp.2d 513, 529 (E.D. Va. 2010) (holding that $305 per night to stay at the Westin was unnecessary and justified a reduction of the requested costs).

When Defendant traveled to Hilton Head, South Carolina for the depositions of Fritz Hohn and Joe Hathcock on February 9th and 10th, Defendant elected to stay at the Sea Pines Resort which cost $1,174.55 for two nights. SUPPAPP000374. There are other nice hotels in the area where the room rates would have been much lower and still been close to the deposition location. Fritz Hohn lives in Hilton Head but this does not justify the unnecessary extravagance of having a deposition in a resort hotel or in lodging in a resort hotel. Moreover, there is no evidence in MRC's legal bills that EZN was ever billed for the lodging costs in Hilton Head.

37

## CONCLUSION

The District Court erred in finding that EZN was the prevailing party in this case because although the successfully defended themselves against Best's claim, they were unsuccessful in the claim they brought against Best. If EZN is a prevailing party, then the District Court should have found that Best was a prevailing party because Best successfully defended themselves against EZN's claims. Courts in Virginia have held that where both parties successfully defended themselves against each other, each party should bear their own attorneys' fees, costs, and expenses.

The issues in this case were neither novel nor complex. Yet both MRC and Pollard failed to exercise good billing judgment and spent inordinate amounts of time discussing and preparing routine documents in this case. For instance, MRC spent nearly 8 hours discussing and drafting a simple, four page Motion to Amend the Court's Scheduling Order, and approximately 69 hours discussing and drafting EZN's answer and counterclaim. Once the Court ruled on the parties' Motions for Summary Judgment, MRC embarked on a billing spree relative to the preparation of their Motion for Attorneys' fees and expenses and Bill of Costs. In all, MRC billed over 200 hours in discussing, drafting, and organizing the motion for attorneys' fees and expenses and Bill of Costs as well as the supporting documentation.

Nor did EZN's counsel exercise good judgment in spending money on litigation costs. EZN's counsel spent enormous amounts of money on meals, lodging, videotaping depositions of witnesses that were going to testify live at trial, sending documents by FedEx, and using a private process server to deliver documents to the Court and Best's counsel. Pollard spent hundreds of dollars on flying to Virginia from Texas to attend depositions in which she never asked a single question. The District Court erred in awarding EZN all of their alleged costs and expenses because their costs and expenses were not reasonable. Moreover, given that either both parties prevailed or neither party prevailed, each party should bear their own attorneys' fees costs and expenses.

**ORAL ARGUMENT IS REQUESTED.**

Respectfully submitted,

By:   /s/ James M. Brady
       James M. Brady
       Virginia State Bar No. 80002
       *Counsel for Plaintiffs-Appellants*
       Best Medical International, Inc.
       7643 Fullerton Road
       Springfield, VA 22153
       Telephone: (703) 451-2378
       Facsimile: (703) 451-8421
       Email: james@teambest.com

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) OR 32(a)

This brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 9,738 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14 point font.

DATED: FEBRUARY 17, 2012            /s/ James M. Brady,
                                    Attorney for Plaintiffs-Appellants

40

## CERTIFICATE OF SERVICE

I hereby certify that on FEBRUARY 17, 2012, I electronically filed the foregoing document with the Clerk of the Court for the Fourth Circuit Court of Appeals using the electronic case filing system of the Court. The electronic case filing system will send notification of such filing to all counsel of record. Counsel may access such document using the Court's system.

/s/ James M. Brady
James M. Brady
Virginia State Bar No. 80002
*Counsel for Plaintiffs/Appellants*
Best Medical International, Inc.
7643 Fullerton Road
Springfield, VA 22153
Telephone: (703) 451-2378
Facsimile: (703) 451-8421
Email: james@teambest.com

Dated:   FEBRUARY 17, 2012.

41

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) OR 32(a)

This brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 8,893 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14 point font.

DATED: FEBRUARY 17, 2012        /s/ James M. Brady,
                                Attorney for Plaintiffs-Appellants

40