**RECORD NO. 11-2089 (L), 11-2141 and 12-1121 (XAP)**

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

**BEST MEDICAL INTERNATIONAL, INC., a Virginia Corporation;**
**BEST VASCULAR, INC., a Delaware Corporation,**

*Plaintiffs-Appellants,*

**v.**

**ECKERT & ZIEGLER NUCLITEC GMBH,**
**a German corporation, successor to QSA Global GmbH,**

*Defendant-Appellee.*

---

### RESPONSE/REPLY BRIEF OF APPELLANTS

---

### ON APPEAL FROM THE UNITED STATES
### DISTRICT COURT FOR THE EASTERN DISTRICT
### OF VIRGINIA AT ALEXANDRIA

James Michael Brady (VSB No. 80002)
BEST MEDICAL
 INTERNATIONAL, INC.
7643 Fullerton Road
Springfield, Virginia 22153
(703) 451-2378 (Telephone)
(703) 451-8421 (Facsimile)
james@teambest.com

Counsel for Plaintiffs-Appellants -

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES.................................................................... 1

RESPONSE TO EZN'S COUNTER-STATEMENT OF FACTS...................... 2
A.   Best's Response to Section III-A of EZN's Opening Brief............................ 2
B.   Best's Response to EZN's Opening Brief Section III-B................................ 2
C.   Best's Response to EZN's Opening Brief Section III-C................................ 6
D.   Best's Response to EZN's Opening Brief Section III-D ............................... 6
E.   Best's Response to Section III-E of EZN's Opening Brief........................... 13

RESPONSE TO EZN'S SUMMARY OF THE ARGUMENT ......................... 17

ARGUMENT........................................................................................ 17
A.   THE PARTIES AGREED ON THE DOCUMENTS TO BE INCLUDED  IN
     THE JOINT APPENDIX. ....................................................................... 17
B.   THE DISTRICT COURT ERRED IN DISMISSING BEST'S CLAIMS.... 23
     1.   Standard of Review:....................................................................... 23
     2.   The District Court Erred In Dismissing Best's Claim For Equitable
          Estoppel ..................................................................................... 24
          a.   Best's Response to EZN's Argument that the District Court
               Properly Dismissed Best's Equitable Estoppel Claim.............. 24
          b.   Best Produced Sufficient Facts to Support Their Equitable
               Estoppel Claim to Survive Summary Judgment...................... 26
     3.   THE DISTRICT COURT ERRED IN DISMISSING BEST'S
          BREACH OF CONTRACT CLAIM FOR EZN'S FAILURE TO
          COOPERATE. ............................................................................... 31
          a.   Count II of Best's Amended Complaint Was Based on
               EZN's Violation of ¶3(c)...................................................... 33
          b.   Best Produced Sufficient Evidence of EZN's Failure for to
               Cooperate to Survive Summary Judgment............................. 34
          c.   Best Provided Notice of EZN's Failure To Cooperate ............ 37
          d.   Best Is Entitled To Damages For The Value of The
               Production Line.................................................................... 37
     4.   THE DISTRICT COURT ERRED IN GRANTING SUMMARY
          JUDGMENT ON COUNT III OF PLAINTIFFS' AMENDED
          COMPLAINT. ............................................................................... 38
     5.   BEST DID NOT (AND COULD NOT) DEFAULT ON THE
          D & D OBLIGATION BEFORE G.E. APPROVED THE PLANS .. 39

I

6.  EZN DID NOT HAVE THE RIGHT TO DISPOSE OF THE
    PRODUCTION LINE EVEN IF BEST DEFAULTED ON ITS
    D & D OBLIGATION (WHICH IT DID NOT). ............................... 40

C.  EZN CANNOT SHOW IT WAS DAMAGED BY BEST POSTING A
    LETTER OF CREDIT IN LIEU OF A PERFORMANCE BOND.............. 42
    1.  Paragraph 3(e)(iii) Sets Forth the Mandatory Process To Be
        Followed In The Event Best Fails To Complete The D & D............. 45
    2.  The Lawsuit Did Not Prevent EZN From Continuing the D & D
        of the Production Lines. ................................................. 47
    3.  The SA Does Not Provide EZN With The Right To Collect
        Damages For Loss of Use or Any Other Consequential or
        Incidental Losses............................................................... 47
    4.  EZN'S Issue Regarding Their Source Disposal Obligation
        is Moot.............................................................................. 48
D.  NEITHER PARTY PREVAILED IN THE DISTRICT COURT. ............... 49
    1.  The Hours Billed By EZN Were Not Reasonable............................ 52
    2.  Pollard's Fees Are Inaccurate and Unreliable .................................... 55

CONCLUSION .................................................................................. 58

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(E) OR 32(A) .......... 60

CERTIFICATE OF SERVICE .......................................................... 61

# TABLE OF AUTHORITIES

## CASES

*AAR, Inc. v. Nunez,* 408 Fed. Appx. 828, 2011 U.S. App. LEXIS 8811
(5th Cir. 2011) .......................................................................................... 19

*American Bankers Insurance Group v. Long,* 453 F.3d 623, 627
(4th Cir. 2006) ......................................................................................... 25

*Bakery and Confectionery Union v. Ralph's Grocery Co.*, 118 F.3d 1018, 1027
(4th Cir. 1997) ......................................................................................... 27

*Barry v. Donnelly,* 781 F.2d 1040 (4th Cir. 1986).................................. 26

*Bernstein v. Bord,* 146 Va. 670, 676, 132 S.E. 698 (1926).................... 45

*Blankenship v. Buchanan General Hospital,* 999 F. Supp. 832, 837 (W.D. Va.
1998) .................................................................................................26, 27

*C.M. English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) ............ 27

*Chawla v. Burger Busters, Inc.*, 255 Va. 616, 624, 499 S.E.2d 829, 833 (1998) ... 54

*Coles v. Deltaville Boatyard, LLC.* ....................................................... 57

*Coles v. Land's Towing & Recovery, Inc.,* 2010 U.S. Dist. LEXIS 135565 *7
(E.D. Va. 2010)........................................................................................ 60

*Comstock Potomac Yard, L.C. v. Balfour Beatty Constr., LLC,* 2010 U.S. Dist.
LEXIS 76491 (E.D. Va. Feb. 23, 2010) ................................................. 55

*Consolidated Sales Co. v. Bank of Hampton Roads,* 193 Va. 307, 317 (1952)...... 45

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-02, 110 L. Ed. 2d 359,
110 S. Ct. 2447 (1990)............................................................................. 24

*Corinthian Mortgage Corp. v. Choicepoint Precision Marketing, LLC,* 2009
U.S. Dist. LEXIS 723 *19 (E.D. Va. 2009)............................................ 61

*Decisive Analytics Corp. v. Chikar,* 75 Va. Cir. 337, 346 (Fairfax 2008).............. 25

*Design and Production, Inc. v. American Exhibitions, Inc.,* U.S. Dist. LEXIS
137455 *6-7 (E.D. Va. 2011)................................................................... 54

*Durham v. National Pool Equipment Co. of Virginia,* 205 Va. 441, 445, 138
S.E.2d 55, 58 (1964) ................................................................................ 45

*Edwards v. City of Goldsboro,* 178 F.3d 231, 241 n. 6 (4th Cir. 1999).................. 19

*EEOC v. Nutri/System, Inc.,* 685 F. Supp. 568, 573 (E.D. Va. 1988) ..................... 60

*Evans v. Eaton Corp. Long Term Disability Plan,* 514 F.3d 315, 321 n.1
(4th Cir. 2008) ......................................................................................... 24

*Farrar v. Hobby,* 506 U.S. 103, 111, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992).... 53

*Farrar v. Hobby,* 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992).... 58

*Federal Hill Homeowners Assn., Inc. v. Community Assn. Underwriters of
America, Inc.,* 2010 U.S. District LEXIS 115407 *7 (E.D. Va. 2010) ............... 16

*Freeman v. Potter,* 2006 U.S. Dist. LEXIS 65329 * 14 (W.D. Va. 2006) ............ 58

*Gitter v. Cardiac & Thoracic Surgical Associates, Ltd.,* 419 Fed. Appx. 365,
    371 (4th Cir. 2011)......................................................................................... 26

*Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co., Inc.,* 240 Va. 457, 459, 397
    S.E.2d 876, 877 (1990) ................................................................................. 34

*Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed.2d 40
    (1983) ...............................................................................................54, 56, 59

*Hill v. Porter Mem. Hosp.,* 90 F.3d 220, 225-226 (7th Cir. 1996) ........................... 20

*Hillman v. Internal Revenue Service,* 263 F.3d 338, 343 n. 6 (4th Cir. 2001).......... 18

*Howze v. Virginia Polytechnic Inst.,* 901 F. Supp. 1091, 1095 (W.D. Va. 1995) .. 27

*James v. Jacobson,* 6 F.3d 233, 239 (4th Cir. 1993)................................................. 24

*Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 670 (E.D. Va. 2004) ................. 59

*Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988) ..................... 28

*Minn. Lawyers Mut. Ins. Co. v. Batzli*, 442 F. App'x. 40, 54 (4th Cir. 2011).......... 56

*Murray v. United Food & Commercial Food Workers Int'l Union,* 289
    F.3d 297, 301 (4th Cir. 2002).......................................................................... 49

*North American Precast, Inc. v. General Casualty Company of Wisconsin,*
    413 Fed. Appx. 574, 578 (4th Cir. 2011)......................................................... 19

*Plyler v. Evatt*, 902 F.2d 273, 277-78 (4th Cir. 1990) ........................................... 55

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792,
    109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989) ..................................................... 53

*Toys "R" Us-Delaware, Inc. v. Tots in Mind, Inc.,* U.S. Dist. LEXIS 20526
    *17-18 (E.D. Va. 2012)................................................................................... 55

*Ulloa v. QSP*, 271 Va. 72, 82, 624 S.E.2d 43, 49 (2006) ....................................... 54

*United States of America v. Feinberg,* 89 F.3d 333, 340 (7th Cir. 1996)................ 19

*United States v. Fidelity and Cas. Co.*, 402 F.2d 893, 897 (4th Cir. 1968)............ 28

*Worldwide Network Services, LLC. v. Dyncorp Int'l, LLC,* 2010 U.S. Dist.
    LEXIS 74545 * 11 (E.D. Va 2010) .................................................................. 53

*Worldwide Network Services, LLC. v. DynCorp Int'l, LLC,* 2010 U.S. Dist.
    LEXIS 74545 *14 ............................................................................................ 55

*Worldwide Network Servs., LLC v. Dyncorp Int'l L.L.C.,* 2008 U.S. Dist.
    LEXIS 85354 (E.D. Va. 2008)......................................................................... 61

## STATUTES

*Fed. R. App. P. 28(a)(9)(A).* .................................................................................. 19

*Fed. R. App. P. 28.1(c)* ........................................................................................... 19

*Fed. R. App. Proc. 30(a)(1)(D)*................................................................................ 19

Federal Arbitration Act, 9 U.S.C. §§ 1 ................................................................... 46

*Va. Code Ann. 8.5A-103(a)* .................................................................................... 43

Virginia Code 8.5-106(c) ......................................................................................... 43

## STATEMENT OF THE ISSUES

Best disputes EZN's Statement of Issues numbered 1 through and including 5 of EZN's Opening Brief because EZN has not accurately reflected the issues presented by Best. Best refers this Court to Best's Opening Brief, page 2, and Supplemental Opening Brief, page 2, for an accurate recitation of the issues presented by Best.

Additionally, EZN incorrectly states that Best has not properly designated an issue on which Best has appealed. *See* footnote 1 to EZN's Opening Brief. Best has not changed its theory of the case and it is disingenuous for EZN to make such an assertion. Plaintiffs' Amended Complaint, ¶41, provides: "The Settlement Agreement requires that ECKERT cooperate with BEST in the performance of its decommissioning obligation, to include providing BEST and its authorized agents and contractors access to the Braunschweig facility. See Ex. 1, ¶3(c)." APP000439. EZN's preposterous claim that Best changed its theory of the case is nothing more than EZN's attempt to mislead the Court so as to prevent the Court from taking a good, hard look at EZN's actions in this matter.

EZN's first two issues on appeal would require this Court to re-write the parties' Settlement Agreement (hereafter "SA"). The third issue raised by EZN is moot as will be shown herein.

## RESPONSE TO EZN'S COUNTER-STATEMENT OF FACTS

Best disputes Defendant's "Counter-Statement of Facts" because it is misleading and the citations do not support the alleged "facts." EZN's claim that Best did nothing is belied by the extensive amount of man hours that Best personnel expended trying to accomplish the D & D not to mention the significant amounts of money Best expended hiring consultants, paying for extension periods, and traveling to Germany to meet with EZN management to make the necessary arrangements. APP00089, 126, 152, 155, 187-188, 199-200, 216-220, 221, 236-238, 239, 242-245, 251, 257, 263, 265.

### A.    Best's Response to Section III-A of EZN's Opening Brief

Best disputes that the March 9, 2005 Initial Term Notice letter (APP00050) stating that Novoste did not wish to extend the term of the Agreement beyond its initial term can be read to say that Novoste "no longer needed any more source trains" as asserted by EZN. EZN's Opening Brief p. 5.

### B.    Best's Response to EZN's Opening Brief Section III-B

Best did not refuse to honor its obligations under the SA but paid €100,000 for the Minimum Inventory Purchase as required by the SA (APP000127-128) and attempted to complete the D & D obligation but was unable to do so because of EZN's failure to cooperate. APP000153, 258, 263, 289. Best disputes that the SA

is the only document needed to resolve this dispute when it is clear the SA must be read with the relevant terms of the SMA to resolve this dispute.[1]

The QSA lawsuit was not settled on the eve of trial as alleged by EZN. EZN's Opening Brief p. 6. The parties entered into the SA on April 16, 2008. APP000446. Discovery had just closed on March 31, 2008 and a pre-trial conference was scheduled for April 17, 2008 at which time a trial date would have been set. 2ndSUPPAPP000102-103[2]. Best provides this information to illustrate to the Court how EZN manufactures "facts" but will refrain from further rebutting EZN's inaccuracies regarding the prior lawsuit brought by QSA against Best, whether contained in this section or elsewhere in EZN's brief, where the alleged "facts" are not relevant to the resolution of any issue on appeal.

EZN states that the SA does not specify an expiration date for Best's bond. EZN's Opening Brief, p. 7. This is misleading because EZN's obligation to post a bond, pursuant to the SA, ¶4(a) (APP000450), does not specify an expiration date for EZN's bond either yet EZN's bond contained an expiration date as well. The SA is silent on the issue of an expiration date for the parties' bonds. This is another

---

[1] Best cannot possibly respond to every inaccurate or misleading statement contained in EZN's Opening Brief and stay within the word limitations set by the Court. Best's failure to address a particular statement directly should not be interpreted as and is not an admission nor does it signify that Best agrees with EZN's statements.

[2] References to documents in the Second Supplemental Appendix are included to rebut EZN's claim that the fact or argument was not part of the record below.

example of EZN presenting facts in a misleading and inaccurate manner.

EZN inaccurately describes the SA's terms by stating that Best's failure to complete the D & D by April 26, 2009 is a "Best Default" unless the failure results from a force majeure or QSA's failure to cooperate and cites to ¶3(e) of the SA. EZN's Opening Brief p. 7. The SA, ¶3(e)(i), actually provides that if Best does not complete the D & D by April 16, 2009 and such failure is not the result of a "Best Force Majeure" or QSA's failure to cooperate with Best, Best shall have the right to cure its failure to complete the D & D by making up to four additional payments of €50,000 each for each 30 day extension. APP000447, ¶3(e)(i). There is no "monthly extension fee" beyond the four extensions provided by ¶3(e)(i) of the SA. The SA provides that Best must provide 30 days written notice prior to April 16, 2009 if the D & D will not be completed by April 16, 2009. Best gave the required notice. APP000447 ¶3(e)(i); APP000192. The only provision that requires Best to notify QSA in writing *and* give QSA 30 days to cure is paragraph 3(g) of the SA. APP000449.

Nor does ¶3(e)(ii)-(iii) transfer to EZN control of the D & D as alleged by EZN. EZN's Opening Brief p. 8; APP000448 ¶3(e)(ii), (iii). The SA, ¶3(e)(ii), gives EZN the right to claim the performance bond "to complete the D & D obligation." Specifically, ¶3(e)(iii) sets forth in detail EZN's obligations if EZN elects to complete the D & D, such as requiring EZN to provide Best with

4

documentation supporting EZN's alleged costs, and details the method for which any dispute about EZN's costs is to be resolved. APP000448, ¶3(e)(iii). It does not state that Best loses the right to have any input in the D & D process nor does it state that Best loses its property rights to the Production Lines.

EZN's interpretation of ¶3(e)(iii) is misleading to the extent that it implies that arbitration is required only when "EZN had undertaken the D & D obligation without resistance by Best…" when the parties' SA contains no such provision. EZN's Opening Brief, p. 9, 57; APP000448, ¶3(e)(iii). Nor does ¶3(e)(iii) deal "solely with disputes arising from EZN's final accounting of the costs of completing the D & D obligation." EZN's Opening Brief p. 9. To the contrary, ¶3(e)(iii) describes EZN's obligations once it undertakes to complete the D & D, regardless of whether there is a dispute about the final accounting of costs. Paragraph 3(e) sets forth all the parties' agreements regarding EZN's remedies if Best does not complete the D & D obligation. The SA does not authorize EZN to sue for breach *and* collect the D & D costs because this would result in a double recovery for EZN, which was not contemplated by the parties nor the terms of the SA. 2ndSUPPAPP000200.

### C.    Best's Response to EZN's Opening Brief Section III-C

After providing excuses for their failure to deliver in specification Source

Trains, EZN admits Best paid €100,000 as required by the SA, ¶2, and provided

EZN with Best's preference for the size of the Source Trains that were to comprise

Best's purchase. EZN's Opening Brief p. 10; APP000120, 127-128. EZN then

states that Best refused all the source trains that QSA offered, including the source

trains that were within specification. EZN's Opening Brief p. 11; APP0001149:20-

1152:11, 338.  Best disputes the SA required Best to accept out of specification

Source Trains and that EZN provided Best the opportunity to take the in

specification Source Trains. Reed testified at deposition that Best paid for and

asked for the in specification source trains.  APP0001152:5-22; 1154:8-18. EZN

would only ship all the source trains. APP0001153:19-20.  EZN's inability to

provide in specification Source Train proves that EZN did not keep the required

inventory pursuant to the SMA. APP000476 ¶10.3.

### D.    Best's Response to EZN's Opening Brief Section III-D

EZN misrepresents to the Court that Best breached the SA by failing to post

a Performance Bond.  EZN's Opening Brief, p. 11. The email referenced by EZN

belies their statement.  APP000141. EZN's counsel advised that the language to be

included in the Letter of Credit was acceptable and that he wanted to see "the

actual letter of credit with the language included **when** you get it."   APP000141

(emphasis added). The language referred to is the conditions under which drafts must be honored. APP000138. EZN's counsel noted that he assumed Best would be obtaining the Letter of Credit that day so clearly EZN did not believe that anything other than a final Letter of Credit would be issued. APP000141. The SA does not require either party to provide a copy of the bond *before* it is issued. APP000447 ¶3(b), 450 ¶4(b).

EZN further states that Best's General Counsel "without QSA's knowledge or approval…inserted a May 31, 2009 expiration date into the Letter of Credit, with no option of renewal." EZN's Opening Brief p. 12. This is misleading because (1) Best provided a sample irrevocable Letter of Credit to EZN's counsel that *contained an expiration date that EZN's counsel approved;* APP000799:11-17, 132-134, 2ndSUPPAPP000128 No. 80; and (2) the expiration date was open and obvious to anyone who took even a cursory look at the Letter of Credit – the information was not hidden or concealed from EZN. APP000148. Best did not insert an expiration date into the Letter of Credit.[3]

Best did not make any meaningful progress toward completing the D & D by April 16, 2009 because EZN failed to cooperate and obstructed Best's efforts, not because Best could not decide what to do with the production line as inaccurately

---

[3] Wachovia actually issued the Letter of Credit, not Best, so Best could not have inserted the expiration date as alleged by EZN. The expiration date was part of the standard terms and conditions. 2ndSUPPAPP000158, 190 at No. 13.

alleged by EZN. EZN's Opening Brief, p. 12; APP000153, 258, 263, 289.  To the

contrary, Weingast testified that the plan was always to reuse the line.

APP000898:7-899:1.  It was EZN's refusal to allow Gamma Services as well as

Best's own employees access to the Production Lines that caused Best to be unable

to complete the D &D.

EZN states Best had no employees qualified to disassemble and package the

production line. EZN's Opening Brief p. 13. Neither the cited testimony of Reed

nor Fritz supports this alleged "fact." APP000708:17-717:18; APP1085:4-20;

2ndSUPPAPP000165 at No. 35.

The SA does not require Best to sign contracts with anyone but simply

requires Best to complete the D & D and remove the Production Lines from EZN's

facility so this "fact" is of no avail to EZN. EZN's Opening Brief p. 13. This is an

extra-contractual obligation that EZN attempts to impose on Best to EZN's benefit.

EZN's claim that Best "has admitted that it defaulted under the Settlement

Agreement by failing to complete this work on time" is misleading and inaccurate.

EZN's Opening Brief, p. 13, 29. EZN cites to ¶36 of Best's Amended Complaint

which cannot fairly be read to support EZN's statement but which actually shows

that EZN prevented Best from completing the D & D. See APP000438 ¶36,

2ndSUPPAPP000161.

EZN states that soon after acquiring QSA's rights under the SA, it "urged Best to comply with the Settlement Agreement but to no avail." EZN's Opening Brief p. 14. EZN cites to no document in the Appendix to support this "fact." The change in ownership is significant in that QSA was never a competitor of Best but EZN is a competitor since both companies sell brachytherapy products. Accordingly, EZN had strong incentive to ensure that Best did not preserve the Production Lines.

EZN further misleadingly states that after notifying EZN that Best would not complete the D & D by April 16, 2009, as required by the SA, "Best then went silent for the next three months." EZN misleads the Court into thinking that Best did nothing during this three month period. While Best may not have communicated with EZN during that time, Best was busy communicating with others in Germany who were in communication with EZN. See APP000199, 203, 213-215, 216-220.

EZN states that on June 17, 2009 EZN notified Best that Best was in default. EZN's Opening Brief p. 14. However, the letter EZN relies on never uses the word "default" but instead discusses Best's right to extend the deadline to complete the D & D obligation and payment of the extension fees and EZN's intention to claim the funds secured by the Letter of Credit to cover their costs for completing the D & D unless Best pays the extension fees. APP000225-226.

9

EZN misleads the Court by stating that "Best never questioned that it had defaulted" under the SA. EZN's Opening Brief, p. 14. Best did not raise the issue of default because EZN's counsel did not state that Best was in default. See APP000225-227. Best's counsel replied to EZN's counsel requesting (not "begging" as stated by EZN) that EZN refrain requesting the Letter of Credit from Best's lender and advising that Best had begun engaging the appropriate personnel and "would appreciate the opportunity to complete the decommissioning...." APP000228-229.

EZN further states the D & D should have been "14 months into execution" but this is another misleading statement because it completely ignores the complexity of this project and the fact that G.E.'s approval had to be obtained by EZN before any work could begin. EZN's Opening Brief p. 14; APP000708:17-717:21, 1118:1-2, 16-22, 1119:1, 1119:19-22-1120:1-6, 727:15-728:13.

EZN also misleadingly states that Fritz was allowed to participate fully in Best's efforts to discharge the D & D obligation but fails to mention that Fritz was prevented from seeing the plant in June 2009 allegedly because he had not signed a Confidentiality Agreement. APP0001087:17-APP0001088:4. EZN also declined to mention the other instances when EZN personnel refused to meet with Fritz. APP000922-925; 888:8-889:2, 2ndSUPPAPP000162. Best sought and obtained an offer from EZN to work with Fritz to complete the D & D. APP000519-521. After

G.E.'s approval was allegedly obtained in October, 2009[4] Best was on the verge of entering into a contract with EZN to complete the D & D.  Hohn sent an email to Krish on October 22, 2009 stating that the prior proposal needed to be signed before EZN could get started. APP000344.  Less than three weeks later, and after they persuaded Best to stop working with Gamma, their competitor, EZN withdrew the offer and substantially increase the price rather than allow Best to complete the D & D. APP000350-351.  Moreover, Fritz's inability to access the Production Lines on either June 24th or June 30th is not the only instance of EZN's failure to cooperate with Best as required by the SA. APP000888:8-889:9, 268, 2ndSUPPAPP000160 (rebuttal to No.15).

Footnote 3 of EZN's Opening Brief (page 16) states that EZN's failure to let Fritz have access to the Production Lines was "the sole instance of willful and intentional failure to cooperate cited" under Count II of Best's Amended Complaint. This is erroneous because ¶44 of the Amended Complaint states that EZN "willfully and intentionally failed to cooperate with BEST by, *among other actions*, refusing BEST the ability to work with its chosen agent...." APP000439-440, ¶44.  Count II incorporates ¶¶1-31 of the Complaint which sets forth additional instances of EZN's failure to cooperate. See APP000434, ¶¶16, 25-27, APP000268.  EZN argues that Best was "free to hire any vendor it wished" but

---

[4] EZN never produced any evidence that the D & D plans were submitted to G.E. or that G.E. responded to the plans.

EZN made that impossible by refusing to allow Gamma access to the Production Lines and by refusing to allow Reed, Best's employee, to supervise the D & D. EZN's Opening Brief p. 17; APP000925; 888:8-890:9, 2ndSUPPAPP000160 rebuttal to No 15.  EZN did not have the right under the SA to deny access to any of Best's agents. APP000447 ¶3(c).

EZN states Best "lost any contractual right to control the means and method of decommissioning the production lines" but cites no authority for that proposition other than Best's admission that no force majeure, other than EZN's actions, prevented Best from completing the D & D obligation. EZN's Opening Brief p. 17.  The SA provides that if Best does not exercise its right to extend the time to complete the D & D, which Best did in this case, EZN has the right to claim the bond and complete the D & D using commercially reasonable efforts. APP000448, ¶3(ii), (iii).  EZN cannot cite any provision of the SA that provides Best loses ownership of the property so that EZN can dispose of the Production Lines because no such provision exists.  Evans testified that EZN never owned the production lines. APP000976:13-977:5.

EZN misleads the Court by stating that Best ignored the invoices for additional extension payments of €50,000 per month but cites no provision in the SA that requires Best to pay monthly rental fees to EZN beyond the four extension fees provided in ¶3(e)(i) of the SA nor can they do so because no such provision

exists. EZN's Opening Brief, p. 17. Best did not pay the invoices submitted by EZN because Best was not contractually obligated to do so. 2ndSUPPAPP000161-162 (rebuttal to No. 28).

Best rejected EZN's November 2009 quote for the work providing for five "specialty employees" because this proposal was substantially higher than the previous proposal the parties had agreed on and Best relied on in performing all the necessary steps to arrive at the point where the D & D could begin. EZN's Opening Brief p. 18; APP000249-50.

There is no provision of the SA that allows EZN to withhold all or any part of the Production Lines from Best until Best provides funds for the D & D and EZN points to no such provision. EZN's Opening Brief, p. 18.

## E.    Best's Response to Section III-E of EZN's Opening Brief

EZN states they had "hardly begun the D & D process" before Best sued to stop it. EZN's Opening Brief, p. 18. Best did not file its Original Complaint in this case until June 3, 2010. According to the correspondence received from EZN's counsel in January 2010, EZN was proceeding with the D & D at that time and notified Best that it intended to draw on the Letter of Credit. APP000589-90. According to EZN's counsel, the Production Line was supposed to be ready to be packed in containers by April 16, 2010 (APP000385-386) so it is difficult to see how filing a lawsuit three months later prevented EZN's work.

13

EZN relies on the District Courts' ruling that Best did not produce facts showing that EZN failed to cooperate with Best. EZN's Opening Brief, p. 21. However, Best has appealed that ruling and further disputes that the SA required Best to show that EZN failed to cooperate prior to April 16, 2009.   Best argued that EZN's failure to cooperate occurred during a time when Best had authority to undertake the D & D Obligation. APP000268, 857:4-858:3, 732:12-15, 738:18-20, 2ndSUPPAPP000160, 162-163.   EZN attempts to manipulate the SA's terms to relieve them of the obligation to cooperate during the extension periods. EZN's Opening Brief p. 21.  This is an absurd interpretation of the SA because it result in Best opting to pay €200,000 in extension fees when EZN did not have to cooperate with Best.  Given that the Production Lines are in EZN's facility, EZN's cooperation in allowing Best and their authorized employees or agents to have access to the Production Lines was critical. Krish, Reed, Uppal, and other Best employees traveled to Germany in 2009, Best retained Fritz, and amended their Radioactive Materials License to possess the Production Line because EZN indicated they were willing to cooperate with Best. APP000216-220, 232, 234, 236-238, 242-245, 263, 268, 289, 290.  Not requiring cooperation during the extension periods results in an absurd reading of the SA, is not supported by the SA's terms, and is not supported by EZN's actions. APP000231, 234, 236-238, 288, 301-305, 318, 325, 330, 341.

The District Court also confused the issue of source train length versus dose rate specification because EZN deliberately conflates these two issues in an attempt to hide the fact that EZN was the first to breach the SA. Best agrees the SA provides that EZN only has to attempt to satisfy Best's preference for source train length. However, Best disputed from the beginning that the SA requires Best to pay €100,000 for worthless out of specification source trains. APP000146; 158; 164, 2ndSUPPAPP000177-178.

EZN argues the District Court's Opinion "indicates EZN prevailed, in part, on three of its four causes of action" but cites to no part of the Memorandum Opinion in support of this allegation nor can they do so. EZN's Opening Brief, p. 22. The District Court granted summary judgment on EZN's Breach of the SA for Failure to Post Performance Bond (APP000616) because EZN failed to show that it suffered any damages resulting from Best's provision of the agreed Letter of Credit in lieu of a Performance Bond. APP0001365. Count II, Breach of the SA based on failure to complete the D & D Obligation, sought EZN's costs for completing the D & D as well as other costs and expenses not authorized by the SA. APP000618. The District Court denied this relief as well stating "the arbitration provisions of the contract are still in effect" meaning EZN has to go through the process set forth in ¶3(e)(iii), so EZN cannot possibly be said to have "prevailed" on this Count. Count III, EZN's fraud claim, was dismissed by the

District Court because EZN "pointed to no evidence in the record that supports a claim of fraudulent inducement by Best." APP0001367. Finally, the District Court found it had addressed all the points raised in EZN's request for Declaratory Relief and denied that Count as moot. APP0001368. Accordingly, EZN did not prevail on any of their four counterclaims.

Best's Opening Supplemental Brief establishes that EZN's fee petition did not seek only those fees and costs incurred in defense of Best's claims. EZN's Opening Brief, p. 23. Contrary to EZN's allegation, Best objected to EZN's Bill of Costs. See SUPPAPP000530, ¶IA.

While Best did not spend over $20,000 in obtaining an expert affidavit as EZN did, Best attached affidavits in support of their fee petition from James Brady, Best's in-house counsel, and Susan Salen, of Rees Broome, Best's lead attorney in the District Court case. The Eastern District of Virginia has previously found that the rates charged by Rees Broome's partners and associates were reasonable in the Northern Virginia legal community. *Federal Hill Homeowners Assn., Inc. v. Community Assn. Underwriters of America, Inc.,* 2010 U.S. District LEXIS 115407 *7 (E.D. Va. 2010).

## RESPONSE TO EZN'S SUMMARY OF THE ARGUMENT

If Best made "no meaningful progress toward completing the D & D obligation" it was not for lack of effort on Best's part but because EZN obstructed Best's efforts by their willful and intentional failure to cooperate as required by ¶3(c) of the SA. APP000153, 258, 263, 289.   EZN states the Letter of Credit was forfeited when EZN elected to take over the D & D efforts but cites no SA provision in support of that argument. EZN's Opening Brief, p. 24; 2ndSUPPAPP000198.

EZN dislikes some of the SA's terms so they ask the Court to keep the terms they like and rewrite the SA to permit EZN to recover extra-contractual damages not provided for in the SA.  Nor is this EZN's first attempt at rewriting the SA. APP000294.  The parties did not contract for such damages and the Court should not rewrite the SA to provide these damages to EZN.


## ARGUMENT

## A.    THE PARTIES AGREED ON THE DOCUMENTS TO BE INCLUDED IN THE JOINT APPENDIX.

EZN first attempts to get the Court to disregard large parts of Best's Opening Brief.  EZN's Opening Brief, p. 26.  The last thing EZN wants is a thorough review of the events giving rise to this lawsuit.  EZN inaccurately states that Best has included evidence and arguments that were not part of the record

below. The Court should disregard EZN's argument because (1) the parties agreed on the documents that would be included in the Joint Appendix (11-2089 Dkt. 45 ¶6); and (2) both Best and EZN included documents that were not part of the record below, a fact of which EZN again fails to advise the Court;[5] and (3) Best did not include any new arguments in their Opening Brief that were not argued to the District Court. The following is a partial list of documents EZN requested to be added to the Appendix which were not part of the record below: APP00056-58, 122, 193, 199-200, 210, 228-229, 245, 319-320, 362, 364, 379, 395, 425-428, 633, and 676.

EZN also incorrectly argues that this Court should ignore "[v]irtually all of the evidence Best relies on" because it is not part of the record below. EZN ignores the Federal Rules of Appellate Procedure, Rule 28, which requires appellants to set forth all of their bases for appeal in their initial brief filed with the Court of Appeals. *Hillman v. Internal Revenue Service,* 263 F.3d 338, 343 n. 6 (4th Cir. 2001); *see also, AAR, Inc. v. Nunez,* 408 Fed. Appx. 828, 2011 U.S. App. LEXIS 8811 (5th Cir. 2011); *United States of America v. Feinberg,* 89 F.3d 333, 340 (7th Cir. 1996). Specifically, Rule 28(a)(9)(A) provides that the appellant's brief must contain the argument, which must contain "appellant's contentions and the reasons for them, with citations to authorities and parts of the record on which the appellant

---

[5] Best's counsel was advised by Jeffrey Neal, their Case Manager in the 4th Circuit, that it was permissible to include additional documentation in the Appendix.

relies...." *Fed. R. App. P. 28(a)(9)(A).* Where there is a cross-appeal, Rule 28.1(c)

provides that the appellant's principal brief must comply with Rule 28(a). *Fed. R.*

*App. P. 28.1(c).* Failure to raise an issue on appeal in compliance with Rule

28(a)(9)(A) constitutes abandonment of that issue. *Edwards v. City of Goldsboro,*

178 F.3d 231, 241 n. 6 (4th Cir. 1999); *see also, North American Precast, Inc. v.*

*General Casualty Company of Wisconsin,* 413 Fed. Appx. 574, 578 (4th Cir. 2011).

EZN asks this Court to ignore Best's arguments and limit its review to the

issues raised by EZN's counterclaims, although Best's arguments and evidence are

not new. The Federal Rules of Appellate Procedure, Rule 30(a)(1)(D), specifically

provides that an appellant "must prepare and file an appendix to the briefs

containing....(D) other parts of the record to which the parties wish to direct the

court's attention." *Fed. R. App. Proc. 30(a)(1)(D).* The purpose of Federal Rule of

Appellate Procedure 30 is for this Court to have all necessary documents before it

as it considers the parties' arguments and renders its' decision. *Hill v. Porter Mem.*

*Hosp.,* 90 F.3d 220, 225-226 (7th Cir. 1996). The documents included in the

Appendices are the documents needed for the Court to properly consider the

arguments of counsel and were in evidence in the District Court or included by

agreement.

Best's Statement of Facts sets forth in chronological order the events that led

up to the filing of the underlying lawsuit so the Court has all the facts "necessary

for the court to reach the conclusion which the brief desires, with appendix references showing the source of the facts stated" as required by Rule 1(A) of the Rule Requirements for Preparation of Briefs and Appendices. Best's Statement of Facts does not contain any new arguments or evidence not presented to the District Court as alleged by EZN. EZN vaguely cites to page numbers and fail to identify the alleged new evidence or arguments. Although Best does not know specifically which evidence EZN claims was new, Best will show that the information set forth in Best's Opening Brief was part of the record below as follows:

1.    The following Appendix citations were part of the Record below:

Page 9: APP00089, 1059, 119, 126, 152, 155, 185, 188, 213.

Page 10: APP000144, 475-476, 682, 686-687, 688-689. See also, APP0001294-1318, 1335-1339.

2.    The following Appendix citations were part of the Record below:

Page 13: APP000182-183, 184, 188, 1237-1238, 242, 152, 1249-1250, 192.

Page 14: APP000216-220, 1059, 221, 232, 236-238, 234.

Page 15: APP000242-244, 249-250.

Page 16: APP000252, 258, 1118-1120, 270-274, 447.

Page 17: APP000281, 282, 865, 289, 743, 516, 291.

Page 18: APP000297, 299, 301-302, 1115-1116.

Page 19: APP000318, 324, 325, 326.

Page 20: APP000327, 1275, 330, 332, 334, 338, 339.

For summary judgment hearing arguments, see APP0001296:8-25, 1297:22-1298:3, 1295:16-25, 1304:13-18, 1310: 3-13, 1297:1-14, 1297:19-21, 1297:15-1298:3, 1297:19-21.

3.     The following Appendix citations on page 23 were part of the record below:  APP000354, 35, 36. See also APP0001298:4-22; 249; 1298:4-22.

4.     Pages 27-31 of Best's Opening Brief contain Best's Summary of the Argument on Best's equitable estoppel and breach of contract claims. EZN incorrectly claims that the Court should ignore Best's arguments in support of its equitable estoppel and breach of contract claims even though they formed the basis of Best's Amended Complaint *and* was argued at the summary judgment hearing. See APP000430-590, 1300:2-1318:25, 2ndSUPPAPP00054-185.

5.     Pages 38-52 - the following arguments and evidence were part of the record below:

a.     Best's argument that in reliance on EZN's representations and actions, Best changed their position and was detrimentally and irreparably harmed. These elements were all plead in Best's Amended Complaint. See APP000432-439, ¶9-39, 2ndSUPPAPP169-172.

b.     The issue regarding whether EZN cooperated with Best in the performance of the D & D as required by the SA was the basis of Count II of

21

Best's lawsuit and cannot seriously be considered a new argument. See

APP000439-440, ¶40-50, 2ndSUPPAPP173-176, 181, 160, 162-163.

      c.     The issue of whether Best could be in default when G.E. had not

approved the D & D and the D & D could not commence without such approval is

not a new argument but is rather a matter of interpretation of the SA. See

APP0001297:22-1298:3; 1310:3-13. Both parties understood that G.E. had to

approve the plans and that such approval was required prior to commencing the D

& D. APP000242 ¶3 (under "Fritz Hohn states as follows").

      6.     Pages 54-56 regarding whether EZN had the right to destroy Best's

production line is perhaps the issue EZN most wants to keep the Court from

reviewing because EZN knows that the SA does not support their destruction of the

Production Lines. Assuming *arguendo,* that Best breached the contract in this

case, there is no precedent or statute that provides that a breach of contract results

in loss of ownership of property or the right to destroy property. EZN cannot

credibly claim this is a new argument given that Best brought the underlying

lawsuit to prevent EZN from destroying the production line and continued to seek

for the duration of the lawsuit an injunction preventing EZN from destroying

Best's valuable property. APP0001299:7-23.

      7.     EZN again does not specify which evidence or arguments are

allegedly new in pages 11-37 of Best's Supplemental Brief, however, Best argued

in the District Court that EZN's counsel billed an unreasonable amount of hours to perform simple legal tasks so this is not a new argument. See SUPPAPP0000532-551. Best further argued at length that Pollard's fees were not recoverable. See SUPPAPP000531-532; 535-548.

## B.    THE DISTRICT COURT ERRED IN DISMISSING BEST'S CLAIMS

### 1.    Standard of Review:

*De novo* review "signals no need to protect the primacy of another decisionmaker because the reviewing court can perform the task as capably as the decisionmaker under review." *Evans v. Eaton Corp. Long Term Disability Plan,* 514 F.3d 315, 321 n.1 (4th Cir. 2008). While there are a number of ways a Court can abuse its discretion, the one relevant here is that "discretion may be abused by an exercise that is flawed by erroneous factual or legal premises." *James v. Jacobson,* 6 F.3d 233, 239 (4th Cir. 1993) *citing Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 401-02, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990) (clearly erroneous factual findings or legal errors underlying discretionary fee award ruling constitutes abuse of discretion).

## 2.    The District Court Erred In Dismissing Best's Claim For Equitable Estoppel

Best did not attempt to plead a "cause of action" for equitable estoppel. EZN's Opening Brief p. 29. Instead, Best invoked the equitable remedy of estoppel, which is a theory invoked in Virginia when "it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage," which is exactly what EZN has attempted and continues to attempt to do in this case. *Decisive Analytics Corp. v. Chikar,* 75 Va. Cir. 337, 346 (Fairfax 2008)(quoting *American Bankers Insurance Group v. Long,* 453 F.3d 623, 627 (4th Cir. 2006).

### a.    *Best's Response to EZN's Argument that the District Court Properly Dismissed Best's Equitable Estoppel Claim*

First, EZN is wrong when it states that equitable estoppel can never be used to obtain "positive relief" because both *Gitter v. Cardiac & Thoracic Surgical Assocs. Ltd.* and *Donnelly* establish that a plaintiff can invoke the doctrine of equitable estoppel in a contract case even before the defendant files an answer. *Gitter v. Cardiac & Thoracic Surgical Associates, Ltd.,* 419 Fed. Appx. 365 (4th Cir. 2011); *Barry v. Donnelly,* 781 F.2d 1040 (4th Cir. 1986). The cases cited by Best further establish that the District Court should have denied EZN's motion for summary judgment on this claim and allowed the parties to proceed to trial so the

24

jury could determine the reasonableness of Best's reliance on EZN's actions and representations.

Second, not only are there numerous cases where equitable estoppel has been used to obtain "positive relief" but the very essence of equitable estoppel to is to obtain positive relief. Equitable estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation. *Blankenship v. Buchanan General Hospital,* 999 F. Supp. 832, 837 (W.D. Va. 1998), *citing Bakery and Confectionery Union v. Ralph's Grocery Co.*, 118 F.3d 1018, 1027 (4th Cir. 1997) (internal citation omitted). If the person who relied on the misrepresentation to his detriment cannot be the party that invokes equitable estoppel, then the doctrine ceases to exist at all. EZN would require the party making the misleading representation (who will nearly always be the defendant), and only that party, invoke the doctrine and would prevent a plaintiff from asserting this equitable remedy in anticipation of the defendant's defenses. This is contrary to the law. "Equitable estoppel applies when the defendant attempted to mislead the plaintiff and the plaintiff reasonably relied upon the representation." *Blankenship,* 999 F.Supp at 837 *citing Howze v. Virginia Polytechnic Inst.*, 901 F. Supp. 1091, 1095 (W.D. Va. 1995) (*citing C.M. English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)). Equitable estoppel is generally applied to "aid a party who, in good faith, has relied, to his detriment

upon the representations of another." *Blankenship,* 999 F.Supp at 837 *citing United States v. Fidelity and Cas. Co.*, 402 F.2d 893, 897 (4th Cir. 1968). Equitable estoppel is a device by which one, who by his statement induces detrimental reliance of another, will not be heard later to contradict the statement that induced the reliance. A person can be equitably estopped even when his earlier statement was not false. Fairness simply dictates that he should not be allowed to change his statement which has been detrimentally relied upon. *Blankenship,* 999 F.Supp at 837-838 *citing Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988). That is exactly the case before the Court.

### b.    *Best Produced Sufficient Facts to Support Their Equitable Estoppel Claim to Survive Summary Judgment*

Best argued the elements of equitable estoppel extensively in its Memorandum in Opposition to EZN's Motion for Summary Judgment.[6] 2ndSUPPAPP000169-172. Best also argued at the summary judgment hearing that EZN's representations and actions led Best to reasonably believe that if Best paid the four extension fees of €50,000 each, Best could complete the D & D. APP0001296:1-1297:21, 1300:16-23, 518-521, 225-227. Best reasonably relied on EZN's actions and representations because (1) the SA required EZN to cooperate

---

[6] This document was not initially included in the Joint Appendix in compliance with the Federal Rules of Appellate Procedure, Rule 30(a)(2). It has been included in the Second Supplemental Appendix solely to refute EZN's allegations.

with Best in completing the D & D; APP000447 ¶3(c); and (2) Best fulfilled the condition imposed by EZN – payment of €200,000 in extension fees – that would allow Best to preserve the production line and complete the D & D. APP0001296:1-1297:21, 1300:16-1301:3, 252-253.

Best took numerous actions that conclusively show that Best relied on EZN's statements, in addition to the payment of €200,000, including, but not limited to: (1) retaining Fritz as a consultant (APP000216-220, 632); (2) sending Jag Uppal to Germany in June 2009 to meet with EZN to discuss terms (APP000230, 239, 245-248); (3) sending other Best employees to Braunschweig to make preparations for the D & D; and (4) preparing detailed project plans for the D & D including the elements allegedly requested by G.E. on September 15, 2009 (APP000271-274, 289, 306-312, 515-516, 531-547, 549-578), well after the extension deadline. These actions evidence that there was an agreement that Best would be permitted to proceed with the D & D.  APP0001296:1-1297:21, 1300:16-1301:19.  Best spent numerous man hours preparing detailed plans for the D & D, obtaining the required licenses to possess the production line, and attempting to get the proper containers to ship the production line to the U.S.  APP000187, 271-278, 292, 334-335, 352-353, 368-372, 381-382, 389-390, 393-400, 514-516, 530-547, 548-578.  Accordingly, Best submitted sufficient evidence to the District Court showing that Best changed their position in reliance on EZN's statements and

conduct and that Best was detrimentally and irreparably harmed by EZN's actions.

EZN also misleads the Court by stating that the only representation Best relied on in support of their equitable estoppel theory was a September 2009 email exchange between Hohn and Krish. Best's Amended Complaint, Exhibit 5, sets forth emails between Hohn and Krish beginning on September 4, 2009, including the Meeting Minutes prepared by EZN following the meeting. The Meeting Minutes establish that agreements were reached at this meeting. APP000527-528. For instance, the Meeting Minutes provide that Menuhr identified four people to work with Fritz during the D & D that would be supervised by Fritz." This is not a discussion about what might or could happen but sets forth the parties' agreements as to how the D & D would be accomplished. The Meeting Minutes further provide that "Best will work out a time schedule and plan for removal of the production line." APP000527. The Meeting Minutes go on to state that it "was agreed by both parties" that Best would be billed every two weeks for the work according to the progress. *Id.* While the referenced communications show that the parties had reached an agreement on how the D & D was to be completed by Best, it is not the only evidence Best relied on in opposing EZN's motion for summary judgment on this claim. Best's Opposition to EZN's Motion for Summary Judgment specifically rebutted EZN's assertion that Best had not produced any evidence in discovery of any specific action or representation by EZN to support the belief that Best would

be permitted to D & D the Production Lines in a cost effective manner. 2ndSUPPAPP000166-167 (Best's rebuttal to No. 37), 169-172.

While there may be cases where the doctrine of equitable estoppel would prevent "the showing of the truth" that is not the case here. Preventing EZN from benefitting from their misrepresentations in this case will only result in (1) the Court ordering EZN to stop their destruction of the Production Lines, provided it is not already complete, or to compensate Best for the loss of their property; (2) requiring EZN to reimburse Best €200,000 in extension payments that Best paid in reliance on EZN's misrepresentations; and (3) in finding that an agreement was reached in September 2009 between the parties that Best would be permitted to continue the D & D so as to preserve the Production Line. APP0001300:16-1303:22.

The SA provides for only four extension payments of €50,000 each to extend Best's time to complete the D & D. APP000447 ¶3(e)(i).  Best paid the €200,000 to EZN to extend the time to complete the D & D.  APP000265, 289. EZN then demanded to be paid a €50,000 per month "storage fee" for each month after August, 2009 that the production line remained on their premises.  However, neither the SA nor any document EZN can point to sets forth any agreement by Best to pay such a "storage fee."  Best's Amended Complaint, Exhibit 5, establishes that EZN agreed to waive that demand since Best was progressing with

the D & D in that detailed plans were being prepared and submitted to EZN for approval.  EZN Opening Brief p.34; APP000529-547, 548-578.  Best never agreed to pay a "storage fee."

EZN misstates Best's argument that it would not have hired Fritz but for EZN's representations that if Best paid the €200,000, Best would be able to continue to conduct the D & D obligation. First, this is not a new argument as it was argued at the summary judgment hearing.  See APP0001296:1-1297:9. Second, it is not "temporally impossible" because the misrepresentations of EZN began prior to June, 2009.  EZN's Opening Brief p. 35. Fritz was retained by Best to "provide technical expertise on the strontium source plant relocation." APP000219.  If Best was not going to relocate the production line, there would have been no need to retain Fritz. If EZN had not represented that they would work with Best *if* Best paid the extension fees, which Best did, Best would have had no reason to retain Fritz. Best did not agree to pay Fritz €100 per hour in the hope that they would be able to work with EZN. Best retained Fritz because EZN had represented that if Best made the extension payments, Best would be permitted to complete the D & D. APP0001296:1-20, 236-238, 239, 240. When EZN realized that Best intended to relocate and reassemble the production line, EZN decided they needed to be compensated for the extra time it would allegedly take to complete the D & D in this manner although the SA specifically allowed Best to

30

complete the D & D by "removal to a location outside of the QSA facility" but did not provide for additional payments for the time it takes to accomplish the D & D in that manner. APP000447 ¶3. EZN and Best are competitors in the brachytherapy business so EZN opted to use every opportunity to financially weaken their competitor and to make it prohibitively expensive to save the Production Line.

Best did **not** abandon the project out of outrage at EZN's November 2009 substantially higher quote as stated by EZN (EZN's Opening Brief p. 35) and ¶27 of Plaintiffs' Amended Complaint does not support this misleading statement. APP000436 ¶27. EZN obstructed Best's efforts to complete the D & D by (1) refusing to respond to Best's legitimate questions regarding EZN's November 2009 offer; and (2) refusing to let Pintaske or Reed supervise the D & D for Best when Fritz was not available even though the SA does not provide EZN with the right to deny access to the Production Lines APP000326, 678, No. 24, 731:5-732:21, 862:12-22, 268, 347.

### 3. THE DISTRICT COURT ERRED IN DISMISSING BEST'S BREACH OF CONTRACT CLAIM FOR EZN'S FAILURE TO COOPERATE.

EZN attempts to confuse this issue by erroneously stating that the failure to cooperate must occur before April 16, 2009. Neither logic nor the terms of the SA support this argument. According to EZN's preposterous reading of the SA, their

obligation to cooperate ended on April 16, 2009 even though Best had the ability to extend the time to complete the D & D for up to 120 days. EZN certainly never notified Best prior to the filing of the lawsuit that they had no obligation to cooperate after April 16, 2009. If they had done so, Best would not have paid €200,000 in extension fees. If the parties had wanted such a requirement in the SA, they could have included it. Its absence is evidence that the parties did not bargain for or agree to such a provision. EZN seeks not to enforce the SA but to rewrite it to their benefit.

The Virginia Supreme Court has held that, in the absence of an ambiguity, the Court must "interpret the contract by examining the language explicitly contained therein." *Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co., Inc.,* 240 Va. 457, 459, 397 S.E.2d 876, 877 (1990). The SA, ¶3(c) provides that EZN "shall cooperate fully with Best in the performance of the D & D Obligation." APP000447 ¶3(c). There is no temporal limitation in the SA and EZN should not be permitted to create one. EZN admits it was contractually required to cooperate during the initial term because EZN erroneously believes that Best does not argue that EZN failed to cooperate during that time but repudiates the SA to the extent that it requires EZN to cooperate during the extension periods when EZN clearly did not cooperate with Best. This illustrates how EZN attempts to excuse their

32

refusal to cooperate. EZN's refusal to cooperate was the sole reason Best was unable to complete the D & D.

EZN also inaccurately states that Best did not give written notice to EZN of EZN's failure to cooperate (EZN's Opening Brief p. 36) but ignores the July 22, 2009, email from Krish to Hohn stating that by "denying access to our representatives, it is Nuclitec that is causing the delay and not us." APP000289. While the email does not use the word "default," Krish is clearly advising EZN that they are not cooperating as required by ¶3(c) of the SA which provides that EZN will provide "Best and its authorized agents and contractors access to the Braunschweig facility when needed...." APP000447, ¶3(c). EZN cannot credibly claim they were not on notice that Best claimed they were not cooperating.

### a. Count II of Best's Amended Complaint Was Based on EZN's Violation of ¶3(c).

Best incorporates ¶3 above by reference in its entirety. EZN further inaccurately asserts that Best is recasting its "willful and intentional" failure to cooperate claim as a failure to cooperate claim as if they are two different things when they are not and that Best is amending its Complaint on appeal. EZN's Opening Brief p. 37, 38. As Count II of the Amended Complaint shows, Best plead their breach of contract claim based on EZN's failure to "cooperate fully" as required by ¶3(c) and further plead that since the failure to cooperate was willful

33

and intentional, Best was entitled to an extension of time pursuant to ¶3(g) of the SA. APP000439-440, ¶¶41-50. EZN's claim that Best "never sued EZN under ¶3(c)" deliberately misconstrues Best's claim in an attempt to confuse the issue to their benefit. This is the same strategy EZN employed in the District Court to obtain dismissal of Best's claims.

### b.      *Best Produced Sufficient Evidence of EZN's Failure for to Cooperate to Survive Summary Judgment.*

The facts show that EZN failed to cooperate by denying Pruesse access to any part of the facility other than the conference room in July 2008, then by denying Fritz access to the Production Line. APP000153-154; 254, 258, 263, 281, 326, 2ndSUPPAPP000160, 162, 163. In the summer of 2009, Fritz and Dr. Gerd Phillips went to EZN's facility to disconnect the laser welding equipment but EZN refused to cooperate with Dr. Phillips by requiring him to have contract with EZN prior to starting any work, which is not required by the SA. APP000923. Dr. Phillips disconnected the laser equipment only to have Menuhr require him to reconnect it again due to the lack of a contract with EZN. *Id.* 2ndSUPPAPP000163. EZN misleadingly states that Best only identified in discovery events that occurred after April 16, 2009but fails to mention that the cited discovery response incorporates the Amended Complaint in full. APP000920 at No. 1.

EZN breached the SA first by failing to provide in specification source trains as required by ¶2 of the SA (APP000144) and by failing to cooperate as early as July 3, 2008 when Hohn stated that he would limit Pruesse's access to the conference room only. APP000153. The SA does not give EZN the right to limit Best's authorized contractor's access to Best's production lines. APP000447 ¶3(c). Pruesse and Fritz met with Menuhr on **June 23, 2008** to discuss the transfer of the production line and dismantling strategies. EZN was well aware that Best was working with Gamma Services at that time and agreed to the meeting. APP000119, 152. EZN's argument that neither Pruesse nor Fritz was an "authorized contractor" of Best because they did not have a contract is nothing more than a weak attempt to justify their breach of the SA by denying access to Best's authorized representatives. EZN's Opening Brief p. 40. First, the SA does not require Best to have a contract with its authorized representatives. Second, Pruesse needed to consult with Fritz and others who were instrumental in the development of the production line and to evaluate the condition and location of the production lines to create an estimate for the costs of completing the D & D. EZN would require Best to have a contract with a "potential" vendor in order for the vendor to obtain the necessary information to create an estimate. This is not required by the SA and is another attempt by EZN to rewrite the SA or justify their failure to cooperate.

35

Nor is Best's argument that failure to allow Pruesse access to the production lines a new argument. See APP000153 and 2ndSUPPAPP000162-163, Best's rebuttal to No. 29. EZN fails to point out that the reason Best never entered into a contract with Gamma Services was because EZN would not allow Gamma access to the Production Lines (APP000326; 2ndSUPPAPP000163) in violation of the SA. Additionally, Best never contracted with Gamma because ***EZN wanted to do the work themselves***, which Best agreed to in an attempt to work with EZN. Krish accepted EZN's offer to complete the D & D for an amount not to exceed €400,000.00 APP000249-50. EZN now attempts to use the fact that Best did not sign a contract with Gamma as evidence that Pintakse, Oesterreich, and Pruesse "were strangers to the project." EZN's Opening Brief p. 41.

Contrary to EZN's argument, the November 2009 quote which substantially increased Best's costs for completing the D & D is another example of EZN's failure to cooperate. EZN's Opening Brief p. 41. EZN knew that Best was attempting to conduct the D & D in a cost effective manner while still saving the Production Lines for future use. EZN also knew that if they revoked their previous offer and substantially increased the costs, Best would be forced to start anew in getting quotes for the work and that this would cause further delay and justify EZN's taking control of the D & D, which apparently was their intention all along. If EZN had truly been cooperating, they would have honored their previous offer

36

and allowed Best to complete the D & D and the Production Lines would have been removed long ago.

### c.   *Best Provided Notice of EZN's Failure To Cooperate*

Krish emailed Hohn in July 2009 advising that EZN was the cause of the delay. APP000289.  EZN was also on written notice that Best contended that EZN's actions in November and December 2009 constituted a willful failure to cooperate.  2ndSUPPAPP160-161 (Rebuttal to ¶20).

### d.   *Best Is Entitled To Damages For The Value of The Production Line*

EZN again attempts to mislead the Court by arguing that Best cannot recover damages because the SA provides only for additional time to complete the D & D without the need to pay extension fees when EZN intentionally and willfully failed to cooperate with Best. This is not the basis of Best's damages claims.  The basis for Best's claim for monetary damages arises from EZN's deliberate destruction of the Production Line, an act not contemplated by the SA.  The SA provides that if EZN decides to complete the D & D they must do so in a commercially reasonable manner.  The SA does not allow EZN to destroy Best's property.  It is undisputed that Best owned the production lines. See APP000236, 74, 976:13-977: 5.  Accordingly, the SA gives only *Best* the right to dispose of the Production Lines.  EZN had the right to decontaminate and decommission (take

37

out of service) the production lines. See APP000448 ¶3(e)(iii). EZN had no right to destroy the production line whether they cooperated with Best or not. EZN asks the Court to give effect to the SA except for when the terms of the SA are inconvenient for EZN.

### 4.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT ON COUNT III OF PLAINTIFFS' AMENDED COMPLAINT.

EZN again deliberately attempts to confuse the Court, as they did below, regarding the issue of the source trains EZN was required to provide to Best in exchange for payment of €100,000. APP000446 ¶2. The issue can be concisely summed up as one of quality (minimum dose rate) versus Source Train length. Best disputes that the SA allows EZN to provide Best with worthless, out of specification source trains in exchange for payment by Best of €100,000. The last sentence of ¶2 of the SA, which EZN ignores, states that "Sources and Source Trains shall refer to radioactive Sources and Source Trains manufactured by QSA under the SMA." As argued in Best's opening brief, the SMA requires QSA (now EZN) to provide in specification Sources and Source Trains. Source Trains are defined in the SMA as "a set of Sources…in varying lengths…meeting the Specifications suitable for use the Medical Device." APP000462 ¶1.28. Accordingly, pursuant to the plain language of the SA, EZN was obligated to provide in specification Source Trains.

The purpose of the minimum source inventory was to provide Best's predecessor with immediate access to Sources and Source Trains as needed to satisfy demand. APP001006:3-14. It would be useless to maintain a minimum inventory of unusable sources that did not meet the minimum dose rate and could not be used in the medical device. Nor did the parties contemplate that Best would be required to pay for unusable Sources and Source Trains which is why the last sentence of ¶2 was included in the SA. EZN did not comply with the last sentence of ¶2 of the SA.

### 5.    BEST DID NOT (AND COULD NOT) DEFAULT ON THE D & D OBLIGATION BEFORE G.E. APPROVED THE PLANS

As shown above, this is not a new argument. See APP0001297:22 – 1298:3. EZN misrepresents that Best admitted it was in default in ¶27 of its Amended Complaint but this is simply not true nor can it be reasonably inferred from the language which simply sets forth the events that led up to Best being forced to stop it's efforts on decommissioning the Production Line as a result of EZN's refusal to cooperate.

EZN is also wrong in stating that Best produced no evidence that G.E. disapproved of Best's plans. This is another red herring floated by EZN in an attempt to confuse the issues. Best was not required under the SA to obtain G.E.'s approval nor to coordinate the D & D with G.E. The SA, ¶3(c) clearly obligates

EZN to coordinate the D & D with their landlord, G.E. APP000447 ¶3(c). EZN
never provided any written confirmation of G.E.'s approval of the plan. The only
evidence EZN can point to in support of their argument that G.E. approved the
plans is the October 22, 2009 email from Hohn which vaguely states that G.E. has
accepted the plan with a few changes but does not specify what changes need to be
made. APP000342. EZN omits that this "acceptance" of the plans by G.E. did not
come until well after the April 16, 2009 initial deadline for completion of the D &
D. Moreover, it is undisputed that the D & D could not commence without first
obtaining G.E. approval. APP0001126:5-9; 1128:8-1130:14; APP0001030:3-19;
1031:18-1033:13; APP0001115:21-1116:13; 1244:25-1245:2; 1247:21-1248:24;
1237:12-1238:6.

### 6.    EZN DID NOT HAVE THE RIGHT TO DISPOSE OF THE PRODUCTION LINE EVEN IF BEST DEFAULTED ON ITS D & D OBLIGATION (WHICH IT DID NOT).

Best is frankly astounded that EZN argues that Best is arguing for the first
time that EZN had no right to dispose of the Production Lines. The entire basis of
Best's lawsuit was to stop EZN's wrongful destruction of Best's valuable property.
In ¶31 of Best's First Amended Complaint, Best stated: "ECKERT is in the
process of removing the production line by disposal...which prevents Best from
retaining ownership of the valuable production line."APP000437 ¶31. Best further
plead in ¶38 that Best would be irreparably damaged if EZN proceeded with

disposal of the Production Lines. See APP000439 ¶38.  Best's counsel argued in the District Court that Best filed their Complaint "to preserve whatever may be there, although it appears that the majority of the production line has in fact been destroyed...." See APP0001299:19-23.

EZN again attempts to mislead the Court by stating the SA provides for the disposal of the Production Lines but fails to point out that the SA provides only Best with the option of disposing of the Production Line.  See APP000447 ¶3 which is entitled "**Best's Obligation to Decontaminate or Decommission the Production Lines.**"  Paragraph 3 specifically refers only to Best and is the only paragraph in the SA that permits disposal of the Production Lines. It is also the only paragraph EZN relies on for the preposterous argument that the SA permits them to dispose of Best's property without Best's permission.  If the parties had intended this provision to apply to EZN, they would have said so. Instead the SA specifically states: "**Best** shall have the option of accomplishing the D & D obligation by disposal, by sale to others, or by decontamination ad/or removal to a location outside of the QSA facility...." APP000447 ¶3.  This explains EZN's attempt to divert the Court's attention away from the issue of Best's property rights in the Production Lines.

**C.    EZN CANNOT SHOW IT WAS DAMAGED BY BEST POSTING A LETTER OF CREDIT IN LIEU OF A PERFORMANCE BOND.**

There was sufficient evidence submitted to the District Court to show that Best satisfied its obligation to post a bond by providing an irrevocable Letter of Credit, *which Defendant accepted*. See APP000137-141; 2ndSUPPAPP000196-199. Best incorporates by reference their Response to EZN's Opening Brief Section III-D in full herein. Menuhr testified at deposition that EZN agreed to accept the Letter of Credit in lieu of the Performance Bond so this should not now be disputed by EZN. APP000174:16-175:6. If the Letter of Credit was in any way "an inadequate substitute for the bond" as EZN alleges, why did EZN not bring this to Best's attention in 2008 when the Letter of Credit was issued? EZN never raised this issue until 2010 when they started searching for ways to claim that Best breached the SA. APP000589-90, 610-11. EZN refuses to acknowledge that both their counsel and QSA's Managing Director were provided copies of the Letter of Credit when it was issued and neither raised a single objection. See APP000148-150.

A Letter of Credit is a contract between the issuing bank and the beneficiary and those holding under him. *Consolidated Sales Co. v. Bank of Hampton Roads*, 193 Va. 307, 317 (1952). Pursuant to Virginia contract law, assent may be inferred

42

from the acts and conduct of the parties. *Durham v. National Pool Equipment Co. of Virginia,* 205 Va. 441, 445, 138 S.E.2d 55, 58 (1964) *citing Bernstein v. Bord,* 146 Va. 670, 676, 132 S.E. 698 (1926). Here, EZN's actions indicate that they were in agreement with the terms of the Letter of Credit because if they had not been in agreement they would have objected. Both EZN's counsel and their Managing Director are intelligent, educated, and more than capable of reading and understanding the terms of the Letter of Credit. The expiration date was not hidden – it was on the front page of the Letter of Credit and was as obvious as any other term of the Letter of Credit. APP000132, 148.  EZN is bound by the terms of the contract whether they read it or not.

Title 8.5A of the Virginia Commercial Code which applies to all credits issued by banks which require a documentary demand for payment. *Va. Code Ann. 8.5A-103(a).*  Specifically, pursuant to Virginia Code 8.5-106(c), if there is no stated expiration date or other provision that determines its duration, a Letter of Credit expires one year after issuance. *Va. Code Ann. 8.5A-106(c).*  Even if the Letter of Credit had not contained an expiration date, it still would have expired one year after issuance under Virginia law. Accordingly, the District Court properly granted summary judgment on this claim.

EZN did not and cannot establish that they were damaged by Best's provision of a Letter of Credit as opposed to a Performance Bond. The undisputed

43

facts show that EZN consented to Best's providing an irrevocable Letter of Credit in lieu of a Performance Bond. APP000174:16-175:6. Moreover, even if the Letter of Credit had been renewed, EZN still would have been required to apply the funds to completion of the D & D obligation and return any unused portion to Best. See APP000448 ¶3(e)(ii)-(iv). There simply is no provision in the SA that allows EZN to retain the funds as damages.

EZN asked the District Court and now asks this Court to award EZN €519,753 in damages for the costs of the D & D **plus** €200,000 for the Letter of Credit. EZN requests this despite Hathcock's testimony that the €519,753 figure is an estimate and he had no direct knowledge of the costs. See APP0001177:5-1180:9. Additionally, to date, EZN has not provided any documentation supporting their alleged costs to complete the D & D. There is no provision in the SA that allows EZN to obtain damages for the time value of money, even if EZN had plead such a theory in their Counterclaim. 2ndSUPPAPP000180-181.

There are two major problems with EZN's argument that they are entitled to be put in the same position they would have been in had the contract been performed. First, the contract was performed – Best provided a Letter of Credit for the required €200,000 to which EZN posed no objection. Second, the SA provides that EZN can only claim the €200,000 bond if Best has not exercised its right to cure its failure to complete the D & D, which in this case Best did. APP000448

¶3(e)(ii).  If EZN thereafter elects to complete the D & D they must follow the procedure set forth in ¶3(e)(iii) of the SA. APP000448(e)(iii), 2ndSUPPAPP000182-184.

It is simply not true that "Best failed to post its performance bond or provide equivalent security" as required by the SA. EZN's Opening Brief p. 55.  Best posted a Letter of Credit that *EZN approved*. APP000799:11-17. 132-134. EZN did not specifically plead any damages in its Counterclaim and failed to establish any recoverable damages as a result of Best's substitution of a Letter of Credit in lieu of a Performance Bond. Accordingly, the District Court properly granted summary judgment to Best on this issue.

### 1.    Paragraph 3(e)(iii) Sets Forth the Mandatory Process To Be Followed In The Event Best Fails To Complete The D & D.

The SA provides that EZN has the right to complete the D & D using "commercially reasonable efforts" and the duty to mitigate its costs. APP000448(e)(iii). Within 30 days after completion of the D & D, EZN must submit a description of the work required to complete the D & D and the costs incurred (the "D & D Obligation Report"). APP000448(e)(iii).  EZN must attach back-up documentation for the expenses incurred including "reasonable labor costs" and the Report must be in English. APP000448(e)(iii).

EZN attempts to avoid their obligations under ¶3(e)(iii) by casting their claim as a breach of contract claim claiming that they are entitled to both contract damages for breach and their costs for completing the D & D.  However, the SA does not provide damages to EZN for undertaking the D & D on its own other than as set forth in ¶3(e)(iii).  EZN cannot simply opt out of ¶3(e)(iii) so they ask the Court to rewrite this provision of the SA.  Further, the SA does not require payments of €50,000 per month for rent or loss or loss of use. The only mention of €50,000 payments are the four payments of €50,000 each if Best elects to extend the time to complete the D & D.  APP000447 ¶3(e).  EZN submitted no evidence to the District Court to support their claim that they are entitled to €50,000 per month for rent or loss of use.  EZN exercised its right to complete the D & D pursuant to ¶3(e)(iii) but does not want to comply with the remaining requirements of that section. EZN's only remedy pursuant to the SA is to follow the procedure set forth in ¶3(e)(iii). It is beyond dispute that the agreed upon arbitration provision must be honored by the parties and the Court. *Murray v. United Food & Commercial Food Workers Int'l Union,* 289 F.3d 297, 301 (4th Cir. 2002); Federal Arbitration Act, 9 U.S.C. §§ 1, *et. seq.* EZN's request that the Court disregard the plain language of the parties SA should be denied.

2.    **The Lawsuit Did Not Prevent EZN From Continuing the D & D of the Production Lines.**

EZN does not explain how Best's filing of the underlying lawsuit short-circuited the process set forth in ¶3(e)(iii). First, EZN assumed control over the D & D in January 2010 but the lawsuit was not filed until June 2010. Once Best's request for an injunction to prevent destruction of the production line was denied, EZN was not prevented from continuing the D & D. The lawsuit itself did not prevent EZN from completing the D & D, preparing the Report and attaching the supporting documentation for evaluation by Best. Hathcock's testimony establishes that EZN continued the D & D after the lawsuit was filed. APP0001189:4-25; 1190: 9-19. Nor does EZN explain why their Counterclaim "does not arise under sub-paragraph 3(e)(iii)" as a result of Best's filing of the lawsuit. EZN's counterclaim can only arise under ¶3(e)(iii) of the SA and the lawsuit does not change that claim.

3.    **The SA Does Not Provide EZN With The Right To Collect Damages For Loss of Use or Any Other Consequential or Incidental Losses.**

EZN again asks the Court to rewrite the SA to provide for losses not contemplated by the parties and not agreed to by the parties. Whether the damages

are available under Virginia law is irrelevant given that the parties waived their

right to these damages in the SA. No other damages were contemplated or

contracted for between the parties.  If the parties did not intend for the arbitration

provision to apply if EZN elected to complete the D & D, then why did the parties

include it in the SA?  EZN seeks to rewrite the parts of ¶3(e)(iii) that EZN does not

want to or cannot comply with in the name of judicial efficiency.  The SA clearly

limits EZN's right to recover costs to those actually and reasonably incurred in

conducting the D & D and does not provide for any other damages. EZN submitted

no evidence of any agreement that entitles EZN to such damages.  The District

Court properly granted summary judgment on EZN's counterclaim.

### 4.    EZN'S Issue Regarding Their Source Disposal Obligation is Moot.

It is mystifying as to why EZN is concerned about being released from their

Source Disposal Obligations under ¶4 of the SA. Best has never returned any

Sources to EZN for disposal so EZN has never incurred any damages related to

this obligation. Moreover, Best agreed to release EZN from their bond obligation

in September 2009. APP000303 ¶5, 329.  Best did not ask EZN to replace the bond

and does not believe that they did so after September 2009.  Nevertheless, EZN is

pursuing an appeal on this issue – which is clearly moot since Best has agreed to

release EZN from their Bond Obligation and has never required EZN to replace the

bond that was released. See APP000303 ¶5, 329.

## D.    NEITHER PARTY PREVAILED IN THE DISTRICT COURT.

The District Court dismissed Counts I, II and III of EZN's Counterclaims in their entirety and declared EZN's request for declaratory relief moot. The District Court granted summary judgment on all of EZN's Counterclaims. EZN incorrectly states that Best did not question the District Court's ruling that EZN prevailed in this lawsuit. EZN's Opening Brief p. 64. To the contrary, Best argued that attorneys' fees are not appropriate in this case because there was no prevailing party.   SUPPAPP000530-531.  EZN is simply incorrect that there cannot be no prevailing party in a lawsuit and ignores the case law cited by Best to the contrary. The SA is silent regarding a situation where both parties successfully defend against the other.  The use of the word "the" does not mean that there can be only one prevailing party as suggested by EZN since the word "the" can be either singular or plural. The Court granted both Best's and EZN's summary judgment motions in their entirety and dismissed the entire case.[7] Neither Best nor EZN were awarded any damages. Yet EZN argues that they "prevailed" when clearly it was a tie – both parties won in that they successfully defended against their adversary's

---

[7] Accordingly, the District Court did not "defer" EZN's award of damages to an arbitration proceeding as stated by EZN. See EZN's Opening Brief p. 66. The District Court found that EZN was not entitled to any damages other than those recoverable pursuant to ¶3(e)(iii) of the SA.

claims and both parties lost in that neither party was granted the relief requested in their claims and neither party was awarded damages. Even if the District Court held that Best defaulted on the D & D obligation, which Best disputes, the District Court still denied all of EZN's requested relief so EZN cannot credibly claim to have prevailed in that respect.

A court may award attorneys' fees only to those parties who achieve at least some relief on the merits of the claim. *Worldwide Network Services, LLC. v. Dyncorp Int'l, LLC,* 2010 U.S. Dist. LEXIS 74545 * 11 (E.D. Va 2010) *citing Farrar v. Hobby*, 506 U.S. 103, 111, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). "A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiffs." *Id*. at 111-12; *see also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989). EZN cannot point to a resolution of this case that changed the legal relationship between the parties. The District Court's dismissal of the entire case put the parties back where they were prior to the filing of the lawsuit.

In Virginia, a prevailing party "is not entitled to recover fees for work performed on unsuccessful claims" under a contractual provision. *Design and Production, Inc. v. American Exhibitions, Inc.,* U.S. Dist. LEXIS 137455 *6-7 (E.D. Va. 2011) *citing Ulloa v. QSP*, 271 Va. 72, 82, 624 S.E.2d 43, 49 (2006)

citing *Chawla v. Burger Busters, Inc.*, 255 Va. 616, 624, 499 S.E.2d 829, 833
(1998).

In *DynCorp,* the Court found that "In addition to the attorney's own
affidavits, the fees applicant must produce satisfactory 'specific evidence of the
prevailing market rates in the relevant community' for the type of work for which
[it] seeks an award." *Worldwide Network Services, LLC. v. DynCorp Int'l, LLC,*
2010 U.S. Dist. LEXIS 74545 *14 *citing Comstock Potomac Yard, L.C. v. Balfour
Beatty Constr., LLC*, 2010 U.S. Dist. LEXIS 76491 (E.D. Va. Feb. 23, 2010)
(quoting *Plyler v. Evatt*, 902 F.2d 273, 277-78 (4th Cir. 1990)). Examples of what
constitutes satisfactory specific evidence "sufficient to verify the prevailing market
rates are affidavits of other local lawyers who are familiar both with the skills of
the fee applicants and more generally with the type of work in the relevant
community." *DynCorp* at *14-15, *citing Plyler*, 902 F.2d at 278. However, this
does not mean that affidavits of other lawyers are required - just that they are an
example of what constitutes satisfactory evidence. Virginia does not require expert
testimony in order to establish the reasonableness of attorneys' fees. *Toys "R" Us-
Delaware, Inc. v. Tots in Mind, Inc.,* U.S. Dist. LEXIS 20526 *17-18 (E.D. Va.
2012) *citing Minn. Lawyers Mut. Ins. Co. v. Batzli*, 442 F. App'x. 40, 54 (4th Cir.
2011).

### 1.  The Hours Billed By EZN Were Not Reasonable.

While Best does not challenge the rates charged by EZN's attorneys, Best does dispute that this was a "complex commercial dispute" that justified the excessive hours spent by EZN in performing mundane legal tasks, such as filing an answer and counterclaim.  This case involved a relatively uncomplicated contract dispute.

Best reasonably believed that EZN submitted their bills under seal for in camera review by the Court.  This belief was reasonable because the wording used by EZN specifically stated that no one other than the Court or Court personnel could open the documents. 2ndSUPPAPP000216.  The warning misled Best into believing that the documents were being submitted for *in camera* review and that only after that review, upon order of the Court, would Best be permitted to see the contents of the envelope.   The Protective Order provided for confidential information to be labeled for "Attorney Eyes Only" when it was not to be viewed by the parties but solely by the parties' attorneys and their experts. 2ndSUPPAPP000138-139.  The sealed documents provided to Best did not contain the "Attorney Eyes Only" wording that would have indicated that the contents could be reviewed by Best but instead stated that the contents were for the Court's eyes only.

EZN does not even attempt to justify the unreasonable amount of hours they spent performing legal tasks in this matter because they know they cannot do so. Instead, EZN attacks Best's argument as a "gut impression." Any attorney more than a year out of law school could draft and file an answer and counterclaim in substantially less than the 22 hours spent by EZN's counsel. EZN provides no precedent in support of their claim that spending over 22 hours drafting an answer to a complaint is reasonable although EZN has the burden of showing that the hours spent performing the legal tasks are reasonable. In *Coles v. Deltaville Boatyard, LLC.,* the District Court assessed whether it was reasonable for two attorneys to bill approximately 27 hours to prepare a response to a post-trial Motion to Alter or Amend. *Deltaville Boatyard, LLC.,* 2012 U.S. Dist. LEXIS 8632 *7-11 (E.D. Va. 2012). The Court found that responding to such a motion involved only a moderate level of difficulty, with no special skill being required, and since one attorney who billed 23 hours to prepare the documents was "an experienced attorney ... acquainted with the rules and standards governing post-trial motions" the time spent in preparing the response was excessive. *Coles,* at 12. By comparison, the amount of time spent by Lonas in preparing the answer in this case, which involves a low level of difficulty and requires no special skill, nearly equals the time the attorney in *Coles* spent preparing a response to a post-judgment motion. Lonas has over 12 years experience handling complex commercial

litigation so it is difficult to understand why he would require nearly 13 hours to draft an answer and counterclaim and spend over nine hours discussing the matter with Pollard. SUPPAPP000194, 196, 199-201, 212-213, 216-217. Additionally, EZN's Answer consists of nine pages while the Counterclaim consists of only 11 pages, exclusive of signature pages and certificates of service. APP000599-607; 612-622.

The most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Freeman v. Potter,* 2006 U.S. Dist. LEXIS 65329 * 14 (W.D. Va. 2006) *citing Farrar v. Hobby,* 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). If a plaintiff has only achieved partial success, even when all claims raised were interrelated, non-frivolous, and raised in good faith, the product of calculating the reasonable number of hours expended on the litigation by the reasonable rate may result in an excessive award. *Freeman* at *14 *citing Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed.2d 40 (1983).

To calculate a reasonable number of hours expended, "the court must necessarily exclude any hours that are 'excessive, redundant, or otherwise unnecessary,' and therefore not reasonably expended on the litigation." *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 670 (E.D. Va. 2004) (*quoting Hensley*, 461 U.S. at 434).

Best did not challenge Mr. Murphy's qualifications because EZN did not designate him as an expert during discovery and had no discovery about Mr. Murphy that Best could use to challenge Mr. Murphy's qualifications. Nor did EZN produce documents related to their attorneys' fees as requested during discovery. 2ndSUPPAPP000214.

EZN repeatedly refers to Best's lawsuit as frivolous but if this is the case, why did EZN not file a 12(b)(6) motion and why did EZN have to expend so many hours responding to an allegedly frivolous lawsuit?

### 2.    Pollard's Fees Are Inaccurate and Unreliable

The Eastern District of Virginia requires parties requesting attorneys' fees to submit proper documentation of the number of hours each attorney spent on the case. *Coles v. Land's Towing & Recovery, Inc.*, 2010 U.S. Dist. LEXIS 135565 *7 (E.D. Va. 2010) *citing EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988) ("[p]roper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks. Fee claimants must submit documentation that reflects reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity."). A court can reduce or deny the requested award if the requesting party does not submit the proper documentation. *Id.*

EZN did not succeed on any of their Counterclaims as alleged by EZN. EZN's Opening Brief p. 83.  Regardless of whether they relied on the same

documentation in supporting their Counterclaims as they used in defeating Best's claims, EZN still cannot be considered a prevailing party. If EZN is a prevailing party because they successfully defended against Best's claims, then Best should be considered a prevailing party for successfully defending against EZN's claims. EZN erroneously claims that the prosecution of its counterclaims did not lead it to incur any greater fees and expenses that they would not have incurred in connection with their affirmative defenses. EZN's Opening Brief, p. 84. However, EZN fails to point out that EZN did not prevail on their affirmative defenses either. Nor does EZN cite any precedent to support the proposition that they are entitled to attorneys' fees in connection with the unsuccessful prosecution of their affirmative defenses.

EZN misleads the Court by citing to *Dyncorp* for the proposition that they can recover attorneys' fees for unsuccessful claims under "a common core of facts" theory. EZN's Opening Brief p. 84 *citing Worldwide Network Servs., LLC v. Dyncorp Int'l L.L.C.,* 2008 U.S. Dist. LEXIS 85354 (E.D. Va. 2008). EZN omits the fact that where the attorneys' time is spent on litigating the case as a whole, a court should not view the lawsuit as a series of discrete and unrelated claims; instead, the court should "focus on the significance of the overall relief obtained . . . in relation to the hours reasonably expended." *Corinthian Mortgage Corp. v. Choicepoint Precision Marketing, LLC,* 2009 U.S. Dist. LEXIS 723 *19 (E.D. Va.

2009) *citing Hensley,* 461 U.S. at 432. As stated in *Hensley,* the end result is what matters. *Id.* In this case, EZN did not obtain any relief at all yet they were awarded all of their requested attorneys' fees, costs and expenses by the District Court.

Nor does the SA support EZN's recovery of all of their costs and expenses as alleged by EZN. EZN's Opening Brief p. 86. The SA provides "the prevailing party shall be entitled to recover…reasonable attorneys' fees and costs…." First, as argued above, EZN was not a prevailing party. Second, neither EZN's attorneys' fees nor their costs and expenses are reasonable for the reasons set forth in Best's Opening Supplemental Brief.

There is nothing in the SA that provides that the prevailing party is entitled to recover both costs and expenses. The wording used by the parties includes the word "costs" only. In a case where, as here, the parties are represented by counsel, and the parties agree only to recovery of "costs" the Court should enforce the language in the SA and permit recovery only of taxable court costs. EZN asks the Court to broaden the language of the SA to permit recovery of their unreasonable expenses as well. This is not what the parties agreed to in the SA.

EZN again misleads the Court by stating that Best never complained about EZN's costs to the District Court. This is simply not true as established by SUPPAPP000551-553. Moreover, Best does not dispute the need to deliver documents to the District Court for a last-minute filing but does dispute that a

private process server was necessary when overnight mail would have accomplished the same result and cost considerably less.

## CONCLUSION

EZN twists and ignores facts not supportive of their position and presents a misleading and inaccurate Counter-Statement of Facts. EZN then attempts to persuade the Court to ignore Best's arguments with their ridiculous argument that Best included new arguments and evidence in their Opening and Supplemental Opening Briefs. Best has shown that all the arguments in those Briefs were part of the record or argued below and the evidence was either part of the record or included in the Appendices submitted in this matter by agreement. Best has also established that the District Court erred in dismissing Best's equitable estoppel and breach of contract claims. EZN's strategy in the District Court was to deliberately confuse the issues and the Court. EZN employs that strategy again by arguing that the size of the Source Train is the only obligation they had to meet under the SA, ¶2. The SA does not support this strained interpretation. The SA also does not support EZN's arguments that they should be allowed to recover "non-arbitral" damages not provided for the by SA. EZN further seeks to be relieved of the obligation to arbitrate should Best dispute EZN's costs to complete the D & D although that provision of the SA is mandatory.  Additionally, the District Court

clearly erred in granted EZN's attorneys' fees, costs, and expenses. The attorneys' fees are excessive for the work performed, duplicative, and illustrate a lack of billing judgment by EZN's counsel.

Respectfully submitted,

By:    /s/ James M. Brady
       James M. Brady
       Virginia State Bar No. 80002
       *Counsel for Plaintiffs-Appellants*
       Best Medical International, Inc.
       7643 Fullerton Road
       Springfield, VA 22153
       Telephone: (703) 451-2378
       Facsimile: (703) 451-8421
       Email: james@teambest.com

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) OR 32(a)

This brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 14,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14 point font.


DATED: APRIL 23, 2012          /s/ James M. Brady,

                               Attorney for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on APRIL 23, 2012, I electronically filed the foregoing document with the Clerk of the Court for the Fourth Circuit Court of Appeals using the electronic case filing system of the Court. The electronic case filing system will send notification of such filing to all counsel of record. Counsel may access such document using the Court's system.

/s/ James M. Brady
James M. Brady
Virginia State Bar No. 80002
*Counsel for Plaintiffs/Appellants*
Best Medical International, Inc.
7643 Fullerton Road
Springfield, VA 22153
Telephone: (703) 451-2378
Facsimile: (703) 451-8421
Email: james@teambest.com

Dated:   APRIL 23, 2012.

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## NOTICE OF PAPER FILING

No. 11-2089 (L)   Caption:   BEST MEDICAL INTERNATIONAL, INC., a Virginia Corporation, et.al.

v.

ECKERT & ZIEGLER NUCLITEC GMBH, a German corporation, successor to QSA Global GmbH

Document: PLAINTIFFS-APPELLANT'S BRIEF – SECOND SUPPLEMENTAL APPENDIX

Under Seal:  No

BEST MEDICAL INTERNATIONAL, INC. and BEST VASCULAR, INC., as the APPELLANT certify that the above-referenced document has been filed and served as follows:

Filed by: James M. Brady via electronic case filing system  on  March 23, 2012

Served by: Barbara Grove, The Appellate Link _____ on March 23, 2012

to:

C. Dewayne  Lonas (VSB  No. 44298) (dlonas@mrcpclaw.com)
Matthew  J. Hundley (VSB  No. 76865) (mhundley@mrcpclaw.com)
MORAN REEVES &  CONN P.C.
411 0 E. Parham  Road
Richmond. VA 23228


Date: March 23, 2012              _/s/_____
                                  James M. Brady, Esq.
                                  Attorney for Appellants